**In re Tony SNOW, Debtor.**

**GREAT WESTERN BANK, Movant,**

**v.**

**Tony SNOW, Respondent.**

**Bankruptcy No. LA 96–36965.**

United States Bankruptcy Court,
C.D. California.

Oct. 25, 1996.

Arthur M. Cisneros, Malcolm, Cisneros & Houser, Irvine, CA, for Great Western Bank.

## OPINION ON RELIEF FROM STAY MOTION REQUESTING IN REM RELIEF

SAMUEL L. BUFFORD, Bankruptcy Judge.

### I. Introduction

In addition to relief from the automatic stay, in this motion secured creditor Great Western Bank ("Great Western") requests that the order be made binding on co-owners and transferees of the property at issue for 180 days, so that no further automatic stay will impede Great Western's foreclosure, pursuant to its power of sale in the deed of trust, on the property here at issue. The purpose of such relief is to prevent any further automatic stay, resulting from a bankruptcy filing by a co-owner or subsequent grantee, from standing in way of the foreclosure sale. Great Western also requests an order enjoining any transfer of the property for the next 180 days, because this is the second recent bankruptcy case involving this property, and the evidence indicates that additional bankruptcy cases may be filed that will further impede Great Western from completing its foreclosure on the property.

The Court grants the requested relief as to subsequent transferees of the property, for a period of 180 days. This opinion explains the reasons for granting this relief, the limits on the availability and extent of such relief, and the procedure required to make such relief effective.

However, the Court denies the requested relief as to the co-owners of the property, because due process requires that they be brought before the Court before such relief may be granted. An injunction prohibiting the transfer of the property is denied on the grounds that Great Western has not brought the required adversary proceeding to permit such relief, and it appears to be unnecessary in light of the relief that is granted herein.

### II. FACTS

The debtor Tony Snow filed this chapter 7 case on August 19, 1996 without legal counsel. In his schedules he states that he owns a single piece of real estate,[1] worth $450,000,[2] in West Hills, California.[3] Snow's schedules also list two secured creditors, Great West-

---

1. One of the grounds that Great Western cites for granting extraordinary relief is that Snow failed to list this property in his schedules. However, Great Western attaches the schedules as Exhibit 7, and the only property listed in Schedule A (the first page of the schedules) is the property here at issue.

 The schedules do not disclose the nature of this real estate. The Court surmises that it is the debtor's principal residence, in which event this case is improperly venued in this division of the court.

2. With its motion Great Western has submitted a $250,000 appraisal of the property.

3. On the bankruptcy petition Snow lists his address as 270 North Cañon Drive in Beverly Hills. This is apparently an office address.

ern and Norwest Financial, and no unsecured creditors. In addition, his list of creditors (separately filed for transmittal to the Bankruptcy Noticing Center) includes Home Savings, Wells Fargo Bank and Twenty First Century Capital [sic]: the schedules reveal nothing about how these entities are creditors, even though such information is required (under penalty of perjury).

Snow's Statement of Financial Affairs, filed on Official Form 7, disclaims any disclosable financial transactions: for every category of information the "none" box is checked. He denies any current income or expenses. Snow has also failed to appear at the initially scheduled meeting of creditors. Each of these facts raises serious questions regarding Snow's *bona fides* in this case.

Great Western has never done business with Snow regarding the West Hills property (except perhaps to receive some payments from him). In 1990 Great Western granted to Edward Metzger a $296,000 loan, secured by a deed of trust on the West Hills real estate. Payments are unpaid from November, 1995. It is this deed of trust that Great Western is now trying to enforce.

In December, 1996 Metzger granted a junior lien on the property to Stephen J. Gelff, to secure a purported 1989 obligation in an unspecified amount. Gelff had filed a chapter 7 bankruptcy case in 1992, which was in the final stages of administration at the time of the transfer. Assuming that the automatic stay of Bankruptcy Code § 362 applied in consequence of the granting of the junior encumbrance to a chapter 7 debtor, Great Western obtained a relief order in the Gelff case in April, 1996.

On August 1, 1996 Metzger recorded a grant deed that transferred the fee interest in the property to Charles Smith, Tony Snow, Thomas Richards, Bill Roberts and Eastern Financial Company as tenants in common. The deed indicates that, after recordation, it is to be mailed to "Smith, Snow, & Company" at Snow's Beverly Hills address. Snow then filed this bankruptcy case eighteen days after the recordation of the transfer.

## III. DISCUSSION

Great Western now brings this motion for relief from the automatic stay. In addition to this relief, Great Western asks that the order "be made binding in any and all chapter 7, 11 and 13 cases, as to the property and as to this debtor and his transferees, assigns and/or co-owners" for 180 days. Presumably such an order would prevent any subsequent automatic stay during this time from impeding Great Western's foreclosure sale. Such relief is sometimes called "in rem" relief, because it is designed to create an obligation that is an in rem right that runs with the land to bind subsequent owners. Great Western also moves the Court to prohibit the debtor from transferring title to the property for 180 days without Court approval. Great Western contends that the special circumstances of this case (which, unfortunately, are not uncommon in this district) warrant the extraordinary relief that it requests.

The Court finds that this is an appropriate case to grant in rem relief, in the nature of an equitable servitude that runs with the land and binds subsequent purchasers, for the requested 180–day period. Due process considerations, however, prohibit the issuance of an order binding the co-owners: the Court has no jurisdiction over them, since they have not been brought before the Court. Furthermore, the Court finds that an injunction against transferring the property is unnecessary in light of the in rem relief granted, and that Great Western has not followed the proper procedure to obtain injunctive relief.

### A. Subsequent Transferees

Due process normally requires that parties in interest be given an opportunity to be heard after due notice before they may be bound by a court order.[4] *See, e.g., Fuentes*

---

4. The Fifth Amendment to the United States Constitution provides, in relevant part, "nor shall

*v. Shevin,* 407 U.S. 67, 81–82, 92 S.Ct. 1983, 1994–95, 32 L.Ed.2d 556 (1972) (procedural due process requires a hearing before chattels may be taken from their possessors by replevin); *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950) (in a reorganization case, actual notice of a claims bar date, instead of notice by publication, is required for known creditors).

Subsequent transferees of the property are not before the Court. Furthermore, unlike the co-owners of the property, they are not even known at the present time. Nevertheless, it is possible to craft an order for effective relief as to them that meets due process requirements.

## 1. Equitable Servitude

There is a plethora of kinds of liens recognized in United States law that do not appear in real property records. However, no such lien should be created unless it is necessary. This Court will not add to the list of "secret" liens where it is not necessary. An equitable servitude, in the Court's view, would provide the relief requested by the Bank, provided that it is properly recorded in the county recorder's office.

■ There is a well-recognized procedure for binding subsequent property owners, that is much older than the United States Constitution. An equitable servitude can attach to real property, and establish the rights of the holder in such a way that notice of these rights is given to everyone. The world is then put on notice that anyone dealing with the property is subject to the servitude. This notice then satisfies the requirements of due process.

Equitable servitudes traditionally arise out of covenants running with the land, a species of property law that is the bane of first year law students. A covenant running with the land binds successive owners of a servient

estate, and frequently benefits the owners of a related (and often adjacent) dominant estate, who are entitled to the benefits of the servitude.

■ Under the traditional United States law of covenants running with the land, the following requirements must be met for the burden of a covenant to run with the land: (1) intent by the contracting parties that the burden bind subsequent owners of the servient estate; (2) horizontal privity (mutual interest in the same land) at the time of creation; (3) vertical privity (the successor to the servient estate holds the same interest as that held by the original promisor); (4) a promise that "touches and concerns" the land; and (5) notice, usually given by the recordation of the covenant. For the running of the benefit with the dominant estate, the elements of intent, vertical privity and touch and concern must be met. *See generally* 1 ARTHUR R. GAUDIO, THE AMERICAN LAW OF REAL PROPERTY § 6.04 (1994).

■ California law on covenants is slightly different. The California statute, as amended in 1968 and 1969, requires the following elements for a covenant to run with the land: (1) the instrument containing the covenant must describe both the dominant estate and the servient estate; (2) the instrument must expressly provide that all successive owners of the servient estate are to be bound by the covenant, and the deed must refer to the recorded restrictions to show the intent of the parties that the covenant run with the land; (3) each act required by the covenant must relate to the use, repair, maintenance, or improvement of, or payment of taxes and assessments on, the land described; (4) the instrument containing the covenant must be recorded in the office of the county recorder of the county where the land is situated. CAL.CIV.CODE § 1468 (West 1996).

■ An equitable servitude arises where one or more of the requirements of a cove-

any person ... be deprived of life, liberty or property, without due process of law...." U.S.

CONST. amend. V.

nant running with the land are not met, but the following conditions are met: (1) the subsequent owner of the servient estate has notice of the covenant; (2) the holder of the servitude is seeking equitable relief only (as opposed to a remedy at law); and (3) it is inequitable to deny the enforcement of the servitude. *See, e.g.,* RESTATEMENT OF PROPERTY § 539 cmt. b (1944); 7 HARRY D. MILLER & MARVIN B. STARR, CURRENT LAW OF CALIFORNIA REAL ESTATE §§ 22:5–22:26 (2d ed. 1990).

The California Supreme Court has recently described equitable servitudes as follows:

> Under the law of equitable servitudes, courts may enforce a promise about the use of land even though the person who made the promise has transferred the land to another.... [E]quitable servitudes permit courts to enforce promises restricting land use when there is no privity of contract between the party seeking to enforce the promise and the party resisting enforcement.

*Nahrstedt v. Lakeside Village Condominium Association,* 8 Cal.4th 361, 33 Cal.Rptr.2d 63, 73–74, 878 P.2d 1275, 1285–86 (1994) (citations omitted).

■ The chief requirement for an equitable servitude is that a successor, against whom enforcement is sought, have notice of the equitable interest at the time that the successor obtains an interest in the property. *See, e.g., Soman Properties, Inc. v. Rikuo Corp.,* 24 Cal.App.4th 471, 29 Cal.Rptr.2d 427, 435 (1994); 4 B.E. WITKIN, SUMMARY OF CALIFORNIA LAW § 499 (1987). Such notice can be provided in two forms. First, constructive notice may be provided by recording an appropriate document in the county recorder's office. Second, actual notice may be given to the party in interest. GAUDIO, *supra,* § 6.05[3][a][1].

In recent years equitable servitudes have been used chiefly to enforce uniform building restrictions. While building restrictions came into use chiefly in the twentieth century, equitable servitudes have been known under the common law for many centuries.[5]

■ Like a covenant running with the land, an equitable servitude must "touch and concern" the land that it burdens. This requirement dates back to *Spencer's Case,* 77 Eng.Rep. 72 (K.B.1583). While difficult to define, generally the concept has been applied to require that performance of the promise be related to the occupancy of the promisor's land, and that the receipt of the benefit be tied to the promisee's land. Susan F. French, *Toward a Modern Law of Servitudes: Reweaving the Ancient Strands,* 55 S.CAL.L.REV. 1261, 1271 (1982). California's statutory definition specifies that each act required by the covenant must relate to the use, repair, maintenance, or improvement of, or payment of taxes and assessments on, the land described. CAL.CIVIL CODE § 1468(c).

■ Equitable servitudes are not limited to those expressed in an agreement with the owner of the servient estate. An equitable servitude may be created by implication, by necessity, by implied reciprocity, by estoppel in rem, or by prescription. *See generally,* Uriel Reichman, *Toward a Unified Concept of Servitudes,* 55 S.CAL.L.REV. 1177, 1242 (1982).

■ The remedy that Great Western requests in this case does not fall within the requirements of an equitable servitude as traditionally understood. Unlike the traditional equitable servitude, in this case there is no prior promise that Great Western seeks to impose on a subsequent owner of the property. Great Western seeks to have the Court impose an obligation on Snow's successors that it did not obtain in the first instance from its original borrower, and indeed could not have obtained. Metzger, the original mortgagor of the property, made no promise

---

5. The ancient vintage of this rule is illustrated in the dictum of the King's Bench in England at the end of an opinion on covenants running with the land, decided in 1583: "Observe, reader, your old books, for they are the fountains out of which these resolutions issue." *Spencer's Case,* 77 Eng. Rep. 72 (K.B.1583).

not to invoke the automatic stay resulting from a bankruptcy filing, and indeed such a promise would be unenforceable.

However, the relief that Great Western seeks in this case is quite like an equitable servitude in many respects. Like an equitable servitude, it runs with the land and binds subsequent purchasers, and it is imposed for the benefit of a holder of a different interest in the land. The relief meets the "touch and concern" requirement, because it restricts the availability to Snow, and his successors in interest, of an automatic stay to delay Great Western's foreclosure sale, and it benefits Great Western with respect to the land by promoting its foreclosure sale rights. Recordation of the order will provide notice to subsequent purchasers.

Unlike an equitable servitude, this interest is not created by contract, and there is no horizontal privity between Snow and Great Western at the time of its creation (by the Court). The Court order is a substitute for an intent by the parties that the burden run with the land to bind subsequent grantees. Its impact is broader than that permitted by vertical privity: it will bind all purchasers, whether or not they take the same interest in the property that Snow holds.

The Court finds that such an equitable servitude may be created by court order. The order is sufficiently like an equitable servitude that it may bind subsequent purchasers of the property just like an equitable servitude, even though these purchasers are not before the Court and have not even been determined at the present time. The Court finds it appropriate to extend the law of equitable servitudes to such a servitude imposed by a court on real property, so that it binds subsequent owners.

Such an order fits squarely within the reason for the enforcement of equitable servitudes, and serves the policy for the recognition of such servitudes. The fundamental function of an equitable servitude is to trans-

fer an owner's entitlements, other than possession, for the efficient utilization of land. Reichman, *supra*, at 123. Given the facts of this case, it is the Court's judgment that the efficient utilization of the property here at issue will be best promoted by permitting Great Western to proceed with its foreclosure sale unimpeded by an further automatic stay resulting from the filing of a bankruptcy case by any subsequent owner of the property at issue for the next 180 days.[6]

■ Equitable servitude law requires that a servitude be narrowly construed. Equally, one imposed by the Court must be narrowly drawn, and limited so that it will achieve its purpose, but at the same time will not unduly burden the land beyond what is necessary for that purpose.

## 2. Recordation

For the Court's order to become an equitable servitude, subsequent owners or possessors must be put on notice of the restrictions contained in the order. Such notice may be constructive, from the recordation of the document setting forth the restrictions. WITKIN, *supra*, § 449. Thus, the recordation of this Court's order will provide the constructive notice necessary to permit the order to impose an equitable servitude on the property at issue in this case, and to bind all subsequent purchasers until the expiration of the order, 180 days after its entry in this case.

California Civil Code § 1213 provides generally for the results of the recordation of an interest in real property:

> Every conveyance of real property or an estate for years therein acknowledged or proved and certified and recorded as prescribed by law from the time it is filed with the recorder for record is constructive notice of the contents thereof to subsequent purchasers and mortgagees. . . .

CAL.CIV.CODE § 1213 (WEST 1996). The impact on subsequent purchasers or mortgagees is provided in section 1214:

---

6. The Court does not assume that a foreclosure sale will in fact take place. The owners still have a right to sell the property before the foreclosure

sale, or to come before the Court to request an injunction to delay the foreclosure upon a showing of appropriate cause.

Every conveyance of real property ... is void as against any subsequent purchaser or mortgagee of the same property, or any part thereof ... whose conveyance if first duly recorded, and as against any judgment affecting the title, unless the conveyance shall have been duly recorded prior to the record of notice of action.

CAL.CIV.CODE § 1214 (West 1996).[7]

■■■ The concept of "purchaser" in sections 1213 and 1214 is very broad. It includes anyone who obtains an ownership interest in the property, by any documentary transfer (except by will). *Id.* § 1215. Thus these statutes protect all subsequent owners and mortgagees against unrecorded interests, including the interest that Great Western seeks in this case. To avoid this result Great Western must record this Court's order in the county recorder's office, or otherwise give notice to purchasers (as broadly defined in section 1215).

The manner of recording a document, to obtain the protection of the recording act, is specified in California Civil Code § 1169: "Instruments entitled to be recorded must be recorded by the county recorder of the county in which the real property affected thereby is situated." Section 1170 specifies how to accomplish the recording:

An instrument is deemed to be recorded when, being duly acknowledged or proved and certified, it is deposited in the recorder's office, with the proper officer, for record.

CAL.CIV.CODE § 1170 (West 1996).

Recordation of the Court's order is the important feature in making it binding on third parties not before the Court, who lack actual notice of the order. Absent recordation, it is rendered void by section 1214 as to subsequent purchasers (in the broad sense specified in section 1215) who lack notice thereof.

### 3. Duration

Servitudes can freeze land uses, and distort patterns of land development and prevent economically productive uses of land. This can impose burdens that become unreasonable and depress land values. French, *supra*, at 1265. For this reason the Court is very reluctant to grant an order of the sort requested for an unlimited duration of time.

Great Western in this case requests its in rem order for a limited period of 180 days. It presumably chose this period of time because of this court's long-standing custom to limit extraordinary relief related to relief from the automatic stay to this 180–day period of time.

The 180–day customary window for extraordinary relief in connection with lifting the automatic stay is tied to the time that it takes to complete the exercise of a power of sale under a California deed of trust.[8] Generally a diligent secured creditor can complete the sale process in approximately four months.[9] The 180–day window is designed to provide a cushion for a limited amount of delay, some of which may be caused by the property owner. The Court presumes that foreclosure under a power of sale can be accomplished in this period of time.

---

7. This is a typical race-notice recording statute. *See, e.g., Walker v. California Mortgage Service (In re Walker),* 861 F.2d 597, 598 (9th Cir.1988); *see also Little v. Duncombe (In re Duncombe),* 143 B.R. 243, 245 (Bankr.C.D.Cal.1992). Under a race-notice recording act, the party who wins the race to the courthouse to record a conveyance of real property obtains superior title unless the winner has notice of the conveyance to the second finisher in the race. *Duncombe,* 143 B.R. at 245.

8. Virtually all California real estate foreclosures utilize the power of sale under a deed of trust, rather than judicial foreclosure.

9. For a description of the distinctive features of this process and its results, *see Hwang v. Stearns (In re Hwang),* 189 B.R. 786, 790 (Bankr.C.D.Cal. 1995); *Moeller v. Lien,* 25 Cal.App.4th 822, 30 Cal.Rptr.2d 777, 782 (1994); *Tomé v. Baer (In re Tomé),* 113 B.R. 626, 629–31 (Bankr.C.D.Cal. 1990).

### 4. Circumstances Justifying an In rem Order

 An in rem order, which imposes an equitable servitude on the real property at issue, is an extraordinary remedy that should be granted only in extraordinary circumstances. Such extraordinary circumstances arise, in the relief from stay context, only where an ordinary relief from stay order will not be effective, as demonstrated by the prior history of the parties and the property.

The Court finds such extraordinary circumstances in this case, where (1) the debtor received a joint interest in the property with other strangers to the transaction with Great Western who may file bankruptcy cases; (2) this transfer occurred after a previous transferee from the original borrower had filed a bankruptcy case; and (3) the court had granted relief from the automatic stay to the moving party herein in that prior case. Furthermore, the joint ownership of the property among four individuals (and a corporation) indicates to the Court that the owners have planned further mischief to prevent Great Western from foreclosing if extraordinary relief is not granted. Thus the Court finds that this is an appropriate case for granting in rem relief.

### 5. Form of Order

The Court requires that relief from stay orders be submitted by prevailing creditors on the official form approved by the Central District of California. The following language may be added to a relief from stay order, and it will accomplish the in rem purpose, in the opinion of this Court:

> Upon recordation of this order in the county recorder's office, it shall be binding on all subsequent transferees by the debtor(s) of the property herein described for a period of 180 days from the entry of this order by this court.

The recordation of an order with this language, in the opinion of the Court, will bind subsequent purchasers.

## B. Co–Owners

 Great Western requests an order in this case that will bind Snow's four co-owners, who are not parties before the Court. This relief must be denied both on procedural and on due process grounds.

Due process requires that a party in interest be given an opportunity to be heard after due notice before the party may be bound by a court order.[10] *See, e.g., Fuentes v. Shevin,* 407 U.S. 67, 81–82, 92 S.Ct. 1983, 1994–95, 32 L.Ed.2d 556 (1972) (procedural due process requires a hearing before chattels may be taken from their possessors by replevin); *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950) (notice of a claims bar date by publication in a reorganization case is insufficient). No notice of the motion before the Court has been given to the co-owners of the property, and they have been given no opportunity to be heard.

Great Western has made no effort to explain why these parties in interest should not be brought before the Court before an order is granted that affects their interests in the property. It has also made no apparent effort to bring them before the Court, or even to give them notice of this hearing. Parties in interest are brought before the Court by the service on them of a summons. Under federal procedure, a complaint naming them as defendants must be served with the summons.[11]

Until these procedures are followed, the Court lacks personal jurisdiction over the co-owners of the property. Thus the Court cannot grant an order relieving Great Western from any future automatic stay resulting

---

**10.** The Fifth Amendment to the United States Constitution provides, in relevant part, "nor shall any person ... be deprived of life, liberty or property, without due process of law...." U.S. Const. amend. V.

**11.** Fed.R.Civ.P. 4(c)(1) provides: "A summons shall be served together with a copy of the com-

plaint." Effective December 1, 1993, this provision was moved from subsection (d)(1), which is incorporated by reference in Fed.R.Bankr.P. 7004(a). Rule 7004(a) has not yet been amended to take into account the 1993 revisions in Rule 4.

from the filing of a bankruptcy case by any of the co-owners of the property.

The Court perceives a practical reason why Great Western did not bring the co-owners before the Court. Great Western's motion for relief from the automatic stay was heard twenty-one days after its filing, which is the minimum permitted under this district's Local Rule 111.[12] In contrast, an adversary proceeding is required to bring the co-owners before the Court, which would likely require substantial additional time. Great Western apparently hoped to obtain its extraordinary relief as to parties not before the Court upon the minimum notice required for parties already before the court.[13] For both procedural and due process reasons, this cannot be done.

## C. Injunction Against Subsequent Transfers

■ Great Western also requests the extraordinary relief of a bar on any transfer of the property by any of the co-owners for the next 180 days. The Court is very reluctant to interfere with the marketability of real property, unless where such relief is absolutely necessary. In this case the Court finds that such relief is not necessary, because of the equitable servitude that it has authorized for the property. This relief will provide as much protection for Great Western as a complete bar on any further transfer (even by any of the co-owners), because any such transfer will not interfere with a prompt completion of foreclosure under Great Western's power of sale.

Furthermore, injunctive relief requires a procedural vehicle that Great Western has not utilized. Rule 7001 of the Federal Rules of Bankruptcy Procedure requires an adversary proceeding to obtain an injunction or other equitable relief. *See generally*, 1 BANKRUPTCY LITIGATION § 5.2[7] (Howard J.

Steinberg ed. 1989). An adversary proceeding invokes essentially all of the Federal Rules of Civil Procedure, that have been developed over a period of many decades for the proper adjudication of controversies in federal court. *See generally*, Christopher M. Klein, *Bankruptcy Rules Made Easy: A Guide to the Federal Rules of Civil Procedure that Apply in Bankruptcy*, 70 AM. BANKR.L.J. 301, 304–05 (1996).

An adversary proceeding is required to assure the protection of the procedural rights of the parties against whom an injunction is sought. It is governed by seventy of the eighty-six Federal Rules of Civil Procedure, which are incorporated by reference (or substantially restated) in the Federal Rules of Bankruptcy Procedure. *Id.* at 304. For example, an adversary proceeding requires the filing and service of a summons and complaint, to assure that adequate notice is given to the defendants of the relief sought against them. FED.R.BANKR.P. 4. It requires that notice be given to the defendants before any injunctive relief is granted, and it gives the defendants an opportunity to respond, and to defend their position. FED.R.BANKR.P. 7065, incorporating by reference virtually all of FED.R.CIV.P. 65.

Great Western has not brought an adversary proceeding in this case. It has only brought this motion for relief from the automatic stay. Absent an adversary proceeding, the injunction requested may not be granted. Accordingly, a bar on further transfer of the property during the next 180 days is denied.

## IV. Conclusion

The Court concludes that this is an appropriate case to grant in rem relief to the secured creditor seeking relief from the automatic stay in this motion. The Court grants relief from the automatic stay, both as to the debtor before the Court and as to any future

---

12. In addition, Bankruptcy Code § 362(e) provides for automatic relief from stay unless at least a preliminary hearing takes place within thirty days of the filing of the motion.

13. The Court further notes that the co-owners were not even served with notice of the motion before the Court. However, service of the motion alone would not confer on the Court personal jurisdiction over them.

owner of the property here at issue in the next 180 days who has notice of this order. Upon the recordation of the order in the county recorder's office, this order will operate as an equitable servitude on the property for 180 days.

The Court denies relief as to the four joint owners of the property who are not before the Court on due process grounds, and because an adversary proceeding has not been brought against them. The Court also denies an injunction prohibiting transfer of the property for the next 180 days, because it appears to the Court that such an injunction is unnecessary in view of the relief granted, and because an adversary proceeding is required for injunctive relief.

Counsel is directed to submit an order consistent with this opinion.