In re Harold Dene AMEY, Debtor.

Aurora Loan Services, Inc., Movant,

v.

Harold Dene Amey, Ernest James Amey, and Mary Ida Townson, Chapter 13 Trustee, Respondents.

No. 04–62641.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Sept. 23, 2004.

Richard A. Lee, Lee Legal Clinic, PC, Decatur, GA, for Debtor.

Karrollanne K. Cayce, McCalla, Raymer, Padrick, Cobb, Nichols & Clark, LLC, Roswell, GA, for Movant.

Mary Ida Townson, Atlanta, GA, Chapter 13 Trustee.

## MEMORANDUM OPINION

PAUL W. BONAPFEL, Bankruptcy Judge.

The issue in this case is whether to grant *in rem* relief with regard to real property owned jointly by the debtor and a nondebtor co-owner in connection with the secured lender's motion for relief from the stay. The Court will grant such relief to the extent set forth below with regard to the debtor's interest in the property; however, because *in rem* relief against a nondebtor must be sought in an adversary proceeding, the Court will not grant relief affecting the co-owner's interest.

## I.

Aurora Loan Services, Inc. ("Movant") filed a motion to terminate the automatic and codebtor stays of 11 U.S.C. §§ 362(a) and 1301(a) in order to commence nonjudicial foreclosure proceedings pursuant to a deed to secure debt on residential real estate known generally as 773 San Miguel Drive, Stone Mountain, Georgia (the "Real Property"). Movant represents that the Real Property is owned jointly by Harold Amey ("Debtor"), the debtor in this and three previously dismissed chapter 13 cases, and Ernest Amey ("Co-owner"), who has not been a debtor in any bankruptcy case, and that the Real Property secures a loan it services on which Debtor and Co-owner are jointly and severally liable.

This is the fourth chapter 13 case that Debtor has filed in a little over two years, the fourth time that the automatic stay of 11 U.S.C. § 362(a) stopped a pending foreclosure, and the fourth case in which Debtor failed to make payments as required. The Court dismissed each of the three previous cases, the last one only eight days before the filing of the current case. Although Debtor's confirmed plan, in accordance with 11 U.S.C. § 1322(b)(5), provides for cure of the prepetition home loan arrearage and the maintenance of regular postpetition monthly payments "outside the plan," Movant represents that it received only two of the first five postpetition payments.

Movant would like to conclude the foreclosure this time without being stayed again by the filing of a future bankruptcy case by Debtor or anyone else. Thus, the motion also requests *in rem* relief: the entry of an order that the filing of any future bankruptcy cases by Debtor, Co-owner, or any parties claiming by or through them will not act as an automatic stay of foreclosure of the Real Property by

Movant, its successors, or assigns. Movant has not requested dismissal of the case.

Neither Debtor nor Co-owner appeared at the hearing on the motion or otherwise contested it, and the chapter 13 Trustee does not oppose it. Based on the facts as represented in the motion and by counsel for Movant at the hearing, the Court concludes that Movant has shown cause for the lifting of the automatic and codebtor stays, and the Court will, therefore, terminate them pursuant to 11 U.S.C. § 362(d) and § 1301(c).

Movant has also shown the necessity of *in rem* relief with regard to Debtor's interest in the Real Property, and the Court will grant that relief as set forth below. Because *in rem* relief against a nondebtor's interest in property owned jointly with a debtor is an equitable remedy that must be sought in an adversary proceeding under Rule 7001(7) of the Federal Rules of Bankruptcy Procedure, however, the Court will deny the motion insofar as it seeks *in rem* relief with regard to Co-owner's interest. The balance of this Opinion addresses these issues regarding *in rem* relief.

## II.

The filing of serial bankruptcy cases by debtors, or by debtors and others acting in concert with them, solely for the purpose of obtaining automatic stays that repeatedly delay foreclosure and with no realistic ability or intent to propose and consummate a feasible chapter 13 plan that provides lawful treatment of a secured lender's claim (typically, as in this case, a residential mortgage claim that is not subject to modification under 11 U.S.C. § 1322(b)(2)), constitutes an abuse of the bankruptcy process and of the Bankruptcy Code's automatic stay provisions. From the secured lender's standpoint, termi-

nation of the stay in a pending case is not an effective remedy if a series of bankruptcy filings, either by the debtor, an existing co-owner of the property, or someone else who acquires the property from the debtor or co-owner, results in repeated automatic stays of foreclosure. Creditors in such circumstances seek relief that will prevent a future bankruptcy case from again interfering with foreclosure. *See generally* Kimberly L. Nelson, *Abusive Filings: Can Courts Stop the Abuse Within the Confines of the Bankruptcy Code?*, 17 BANKR. DEV. J. 331 (2000); Luis F. Chaves, *In Rem Bankruptcy Re-filing Bars: Will They Stop Abuse of the Automatic Stay Against Mortgages?*, 24 CAL. BANKR.J. 3 (1998); Spencer Zane Baretz, *Combating the Chapter 13 Serial Filer: An Argument for Orders Containing Prospective Relief From the Automatic Stay Provision*, 25 HOFSTRA L.REV. 1315 (1997).

Creditors often seek dismissal of a case pursuant to 11 U.S.C. § 109(g), so that the debtor is ineligible to file another case for 180 days, or "with prejudice" pursuant to 11 U.S.C. § 349(a), under which courts have barred a debtor from refiling for even longer periods of time or barred the discharge of existing debts in a future case or both. *E.g., Casse v. Key Bank Nat'l Ass'n (In re Casse)*, 198 F.3d 327 (2d Cir.1999); *Colonial Auto Ctr. v. Tomlin (In re Tomlin)*, 105 F.3d 933 (4th Cir.1997); *In re LeSane*, 301 B.R. 625 (Bankr.M.D.Ga. 2003); *In re Jones*, 289 B.R. 436 (Bankr. M.D.Ala.2003); *Nesmith v. James (In re James)*, 1998 WL 34064494 (Bankr.S.D.Ga. 1998). *Contra, e.g., Frieouf v. United States (In re Frieouf)*, 938 F.2d 1099 (10th Cir.1991); *In re Jones*, 192 B.R. 289, 292 (Bankr.M.D.Ga.1996).

Dismissal under § 109(g) or § 349(a), however, is not always effective in preventing abusive serial filings that frustrate foreclosure. First, if the property is joint-

ly owned and the co-owner is not a debtor in the dismissed case, the co-owner is free to file a bankruptcy petition that will stop the foreclosure. Second, an ineligible or barred debtor might transfer her interest to another entity who, unrestricted by § 109(g) ineligibility or a § 349(a) refiling bar, could file a bankruptcy case. Finally, notwithstanding a legal prohibition on filing another case, a debtor could nevertheless do so, thereby requiring the secured lender to ponder whether an unlawful filing is ineffective to result in a stay, *see Umali v. Dhanani (In re Umali),* 345 F.3d 818, 823 (9th Cir.2003), *withdrawn,* 382 F.3d 1158 (9th Cir.2004), or whether it nevertheless imposes a stay from which relief must be sought. *See In re Flores,* 291 B.R. 44, 54–55 (Bankr.S.D.N.Y.2003).

Alternatively, a lender might seek to prevent a stay in a new case by asking the bankruptcy court *not* to dismiss the debtor's case for a period long enough to conclude its foreclosure on the theory that a debtor in a pending chapter 13 case cannot legally file another one or transfer property of the estate to another entity. (Chapter 13 confirmation orders in this district typically provide that a debtor's property remains property of the estate until the case is concluded and prohibit its transfer without court approval.) This approach, however, does not address the problem of a nondebtor co-owner. Moreover, a debtor can circumvent this approach by exercising the right under § 1307(b) to voluntarily dismiss. If stay relief has been requested, such a dismissal is also a § 109(g) dismissal with the consequences and opportunities for mischief discussed above.

There are other problems with keeping a case open. First, in order to be certain that the case is not dismissed at the request of the chapter 13 Trustee or another creditor, the secured lender would necessarily have to seek an order requiring that the case stay open long enough to permit its foreclosure to take place—yet another burden for the secured lender. Second, requiring the forced continuation of the case could adversely affect other parties in interest. For example, if the debtor's failure to perform under the plan or other cause warranted dismissal, keeping the case open would be quite unfair to other creditors; the stay would remain in effect to prevent their exercise of state law remedies when the stay should end as a consequence of the cause for dismissal of the case. Finally, continued administration of a case that should be dismissed imposes burdens on the chapter 13 Trustee and the Court. Whether a case should be dismissed is not properly tied to the need of a particular creditor to keep it open to accomplish purposes unique to that creditor.

These approaches attack the problem of a future abusive bankruptcy stay by attempting to preclude the filing of future bankruptcy cases in which the property is an asset and in which the stay will automatically stop foreclosure. The primary deficiency of these remedies is their inability to control all of the potential ways that a subsequent bankruptcy case affecting the property might be filed. Lenders have, therefore, sought prospective relief that applies with regard to the property itself, *i.e., in rem,* regardless of who owns it and regardless of who files a bankruptcy case involving the property.

If granted, *in rem* relief makes the automatic stay in any future bankruptcy cases filed within a specified time inapplicable to the lender's foreclosure, regardless of who files the case. *In rem* relief thus acknowledges the possibility (if not probability) of continued efforts to frustrate foreclosure efforts through repeated filings, whether by the same or different persons. Rather than seeking to prevent a future automatic

stay by preventing a future bankruptcy case, the *in rem* remedy directly addresses abuse of the automatic stay by prospectively eliminating the automatic stay with regard to the lender's collateral even if there is a future bankruptcy case.

Section 105(a) of the Bankruptcy Code authorizes a bankruptcy court to grant *in rem* relief in connection with granting relief from the stay under § 362(d) in extraordinary circumstances where an ordinary relief from stay order will not be effective to protect a secured lender's rights, as demonstrated by the prior history of the parties and the property. The remedy is granted when there has been an abuse of the bankruptcy laws and of the automatic stay resulting from the filings of multiple bankruptcy cases; abuse is shown when the improper or unsuccessful prosecution of a series of cases (or the failure to prosecute them at all) demonstrates either a clear inability to obtain confirmation of, and to make required payments under, a feasible chapter 13 plan that provides lawful treatment of the secured lender's claim or the lack of a good faith intent to do so. An *in rem* order may be issued not only with regard to the interest of a debtor in a pending case, but also with regard to the interests of non-debtor co-owners. *See, e.g., In re Feldman,* 309 B.R. 422 (Bankr.E.D.N.Y.2004); *In re Price,* 304 B.R. 769 (Bankr.N.D.Ohio 2004); *In re Roeben,* 294 B.R. 840 (Bankr. E.D.Ark.2003); *In re Yimam,* 214 B.R. 463 (Bankr.D.Md.1997); *In re Snow,* 201 B.R. 968 (Bankr.C.D.Cal.1996).

To make *in rem* relief effective, it must also be applicable to subsequent owners. *In rem* relief that binds a subsequent owner imposes a limitation on the new owner's rights that do not normally exist, *i.e.,* the right to an automatic stay upon the filing of a bankruptcy case. In accordance with the general principle that a good faith purchaser of real estate is not bound by a restriction on the seller of which the purchaser has no actual or constructive notice, *in rem* relief should not be effective as against a subsequent good faith purchaser who does not have actual or constructive notice of it. Because notice may be provided by recordation in the real estate records, recordation of an *in rem* order provides constructive notice of its terms and, therefore, binds any subsequent transferee until its expiration. *See, e.g., Roeben, supra,* at 848; *Snow, supra,* at 974.

Unlike the dismissal remedies discussed above, the *in rem* remedy is specifically tailored to the problem of abusive use of the stay, provides certainty for the creditor, and does not unfairly affect the positions of other parties in interest. Moreover, it is a less drastic consequence for a debtor than a § 109(g) or § 349(a) dismissal because it does not restrict the debtor's ability to obtain bankruptcy relief with regard to other debts and assets. And it avoids concerns about whether a bankruptcy court has the authority to restrict a nondebtor's right to bankruptcy relief in a case in which she is not the debtor. Thus, *in rem* relief is an independent remedy that may be granted regardless of whether the case is dismissed or whether dismissal is pursuant to § 109(g) or otherwise prejudicial under § 349(a).

Movant has shown conduct by Debtor that, unexplained, demonstrates that *in rem* relief is necessary in this case to make stay relief effective with regard to Debtor's interest in the Real Property. For reasons set forth in the cases cited above, therefore, the Court will enter an Order providing that the filing of a bankruptcy case by Debtor or by any subsequent owner of Debtor's interest in the Real Property for a period of 180 days

from the date of entry of this Order will not result in the imposition of the automatic stay of § 362(a) or the codebtor stay of § 1301(a) with regard to the Real Property. In order to make the *in rem* relief applicable with regard to a subsequent good faith purchaser of Debtor's interest, the Court will permit Movant to record a copy of the Order in the real estate records.

█ The purpose of the *in rem* remedy is to prevent abuse of automatic stays in a future bankruptcy case and not to preclude legitimate administration of the property in that case if warranted. Consequently, the Court limits the *in rem* remedy to relief from the stays that arise automatically under § 362(a) and § 1301(a); the relief is without prejudice to the right of any party in interest in a future bankruptcy case, including a debtor who files it, to affirmatively seek a stay of foreclosure for cause shown.

### III.

Movant also seeks *in rem* relief with regard to the interest of Co-owner. The Court is not in a position to grant such relief with regard to Co-owner's interest in the Real Property, however, because Co-owner is not properly before the Court. *See, e.g., In re Snow*, 201 B.R. 968, 976–77

(Bankr.C.D.Cal.1996); *In re Chappelle*, 2000 WL 33529765 at * 2 (Bankr.D.D.C. 2000).

█ *In rem* relief is an extraordinary remedy that is equitable in nature. *E.g., Snow, supra*, at 972–74. Rule 7001(7) of the Federal Rules of Bankruptcy Procedure requires an adversary proceeding to obtain equitable relief. Because Movant has not sought relief with regard to Co-owner's interest in an adversary proceeding, the Court cannot grant it. (The footnote below explains why Rule 7001(7) does not require an adversary proceeding to obtain relief with regard to Debtor's interest.[1])

In view of Rule 7001(7)'s applicability, the Court does not have to address the further question of whether a bankruptcy court lacks personal jurisdiction over a nondebtor co-owner with regard to *in rem* relief affecting the co-owner's interest unless the co-owner is subjected to the court's jurisdiction through the issuance and summons of service in an adversary proceeding, *Snow, supra*, at 976–77, or whether the court has *in rem* jurisdiction over property in which both a debtor and a co-owner have an interest such that establishing personal jurisdiction is not required in order to grant *in rem* relief with regard

---

1. There are important differences between *in rem* relief against a debtor and against a non-debtor that make the Court's requirement of an adversary proceeding to grant relief against a nondebtor inapplicable to a request for *in rem* relief against a debtor. As applied to a debtor in a pending case, the authority to grant an *in rem* remedy arises primarily from the Court's authority under § 362(d) to provide meaningful stay relief and under § 105(a) to prevent abuse of the bankruptcy process by a debtor who has invoked it in the case before the court. *In rem* relief, insofar as it applies to a debtor and the debtor's property, is thus a fair and logical extension of relief from the stay; it supplements and makes effective relief to which a creditor is

entitled under § 362(d). As such, it does not have the same characteristics of an equitable remedy that it has when applied to a nondebtor. Consequently, *in rem* relief concerning a debtor and the debtor's property is more properly construed as a request for a form of relief from the stay that a creditor may seek by motion under Rule 4001 than as an equitable remedy within the meaning of Rule 7001(7). Moreover, unlike a nondebtor, a debtor has affirmatively and quite intentionally invoked the jurisdiction of the bankruptcy court over the debtor's person, property, and debts. There is, therefore, no question about the bankruptcy court's jurisdiction, both *in personam* and *in rem*.

to the co-owner's interest. *E.g., In re Feldman,* 309 B.R. 422, 429 (Bankr. E.D.N.Y.2004); *In re Price,* 304 B.R. 769, 773 (Bankr.N.D.Ohio 2004).

The Court notes that other courts have granted *in rem* relief against a nondebtor even in the absence of an adversary proceeding. *E.g., Price, supra; In re Roeben,* 294 B.R. 840 (Bankr.E.D.Ark.2003); *In re Martin,* 215 B.R. 119 (Bankr.N.D.Tex. 1997); *In re Yimam,* 214 B.R. 463 (Bankr. D.Md.1997); *In re Fernandez,* 212 B.R. 361 (Bankr.C.D.Cal.1997), *aff'd on other grounds,* 227 B.R. 174 (9th Cir. BAP 1998), *aff'd* 208 F.3d 220 (9th Cir.2000) (Table) (Unpublished decision at 2000 WL 152769); *see Feldman, supra,* at 429. The abuses of the bankruptcy process in such cases may well have justified the granting of *in rem* relief without the further delay of an adversary proceeding, and the nondebtors in such cases may well have received the equivalent of the protections afforded to a defendant in an adversary proceeding. Perhaps the existence of *in rem* jurisdiction over a co-owner's property dispenses with the necessity of personal jurisdiction over the co-owner. Nevertheless, requiring a secured lender to commence an adversary proceeding to obtain the extraordinary remedy of *in rem* relief is a more appropriate and certain way to insure that a nondebtor receives all the procedural protections that the bankruptcy rules and due process require, prevents any resulting order from being subject to later attack as being procedurally defective, and eliminates any issue about whether such an order is void for lack of personal jurisdiction. Moreover, because *in rem* relief is itself an extraordinary remedy, the procedure to obtain it as a matter of policy should *not* be extraordinary but, instead, should be unquestionably in compliance with normally applicable procedures.

A complaint in an adversary proceeding requesting *in rem* relief need not require much more time to resolve than a contested matter initiated by a motion. Rule 9006(c) permits the Court for cause shown to reduce the time specified by Rule 7012(a) for a party to answer, and the Court has broad discretion to enter orders with regard to discovery and scheduling of trial that will permit conclusion of an adversary proceeding as promptly as a contested matter involving the same disputes. FED.R.CIV.P. 16(b), 26(b), 26(f), and 40, *incorporated by* FED. R. BANKR.P. 7016, 7026, and 7040; FED. R. BANKR.P. 9006(c). If a creditor has grounds for concern that a nondebtor may transfer property to another before the creditor can be heard on the merits, the creditor may request preliminary injunctive relief. FED.R.CIV.P. 65, *incorporated by* FED. R. BANKR.P. 7065. And, of course, the ordinary requests for relief from the automatic and codebtor stays in the pending case may be joined with the extraordinary request for *in rem* relief against a debtor and a nondebtor. FED. R. CIV. P. 18(a), 20(a), *incorporated by* FED. R. BANKR.P. 7018, 7020. Because the adversary rules thus provide a creditor with the ability to seek and obtain, where warranted, prompt *in rem* relief against abuse of the automatic stay by a co-owner who is not a debtor, there is no reason that they should not be followed.

Because Movant has not sought *in rem* relief against Co-owner in an adversary proceeding, the Court will not grant *in rem* relief with regard to Co-owner's interest in the Real Property. Movant's request for *in rem* relief against Co-owner is, therefore, denied, without prejudice.

## IV.

Based on the foregoing, the Court (1) terminates the automatic stay of 11 U.S.C. § 362(a) with regard to the Real Property

and the codebtor stay of 11 U.S.C. § 1301(a); (2) grants *in rem* relief with regard to Debtor's interest in the real property as set forth above; but (3) denies the motion insofar as it seeks *in rem* relief with regard to Co-owner's interest in the Real Property. The Court will enter a separate Order granting relief to the extent set forth herein. The 10 day stay otherwise provided by Rule 4001(a)(3) will not be applicable, and stay relief will, therefore, be effective immediately upon entry of the Order.

This opinion, together with the Court's announcement of its ruling at the hearing held on the motion, constitutes the Court's findings of fact and conclusions of law pursuant to FED. R. CIV. P. 52(a), *incorporated by* FED. R. BANKR. P. 7052.

## ORDER TERMINATING STAY AND GRANTING *IN REM* RELIEF

Aurora Loan Services, Inc. ("Movant") filed a "Motion for Relief from the Automatic Stay and Co–Debtor Stay and for In Rem Relief" (the "Motion"). The Motion seeks relief in this chapter 13 case from the automatic stay of 11 U.S.C. § 362(a) and the codebtor stay of 11 U.S.C. § 1301(a) with regard to enforcement of a loan secured by a deed to secure debt on real property known generally as 773 San Miguel Drive, Stone Mountain, Georgia (the "Real Property"). Movant claims that Harold Amey, the debtor in this case ("Debtor"), and Ernest Amey ("Co-owner"), who is not a debtor in this case, jointly own the Real Property and are jointly liable on the debt. The Motion also seeks *in rem* relief, which would provide that the filing of any future bankruptcy cases by Debtor, Co-owner, or any parties claiming by or through them, not act as an automatic stay with respect to Movant, its successors, or assigns.

The Court having made its findings of fact and conclusions of law with regard to the Motion as set forth in its Memorandum Opinion of even date herewith and as announced orally in open court at the hearing on the Motion held on August 18, 2004, it is hereby **ORDERED and ADJUDGED** as follows:

1. The automatic stay of 11 U.S.C. § 362(a) and the codebtor stay of 11 U.S.C. § 1301(a) shall be, and they hereby are, terminated with regard to enforcement by Movant, its successors, or assigns, of its rights under the deed to secure debt with regard to the Real Property, including foreclosure of the Real Property through advertisement and sale of the Real Property in accordance with Georgia law and the institution of dispossessory proceedings with regard to the Real Property as appropriate.

2. The codebtor stay of 11 U.S.C. § 1301(a) is hereby terminated with regard to exercise of any other rights of Movant, its successors, and assigns, against Co-owner.

3. The filing of a petition for relief under Title 11 of the United States Code within 180 days of the date of entry of this Order by any person acquiring or claiming an ownership or other interest in the Real Property from, by, or through Debtor after the date of filing of Debtor's bankruptcy case shall not result in the imposition of the automatic stay pursuant to 11 U.S.C. § 362(a) or the codebtor stay pursuant to 11 U.S.C. §§ 1301(a) in any such case with regard to enforcement by Movant, its successors, or assigns, of its rights under the deed to secure debt with regard to the Real Property, including foreclosure of the Real Property through advertisement and sale of the Real Property in accordance with Georgia law and the institution of dispossessory proceedings with regard to the Real Property as appropriate. The

provisions of this Order shall apply with respect to any good faith purchaser of Debtor's interest in the Real Property who acquires such interest from, by, or through Debtor only if such good faith purchaser has actual or constructive notice thereof. Movant may cause this Order to be recorded in the appropriate real estate records of the county in which the Real Property is situated, and proper recordation shall be sufficient to provide notice of the terms of this Order to any person that thereafter may acquire or claim an interest in the Real Property from, by, or through Debtor. This Order is without prejudice to the right of any party in interest in any future bankruptcy case to seek a stay of foreclosure for cause shown.

4. To the extent that any stay is now or subsequently terminated or ineffective with regard to Movant, its successors, or assigns, the stay shall also be terminated and ineffective with regard to any claim or interest of any other person whose claim or interest in the Real Property is subject, subordinate, or inferior to the deed to secure debt held by Movant, its successors, or assigns.

5. Federal Rule of Bankruptcy Procedure 4001(a)(3) does not apply to this Order and to the relief from the stays provided hereby, such that the relief provided herein and the termination of the stays as set forth above shall be effective immediately upon its entry.

6. Movant's motion with regard to relief against Co-owner, other than termination of the codebtor stay as aforesaid, is denied, without prejudice.