**In re GOLDEN STATE CAPITAL CORP., Debtor.**

**County of Fresno, Movant,**

v.

**Golden State Capital Corp., Respondent.**

**No. 04–17201–B–11.**

United States Bankruptcy Court, E.D. California, Fresno Division.

Nov. 16, 2004.

Golden State Capital Corp., Fresno, CA, pro se.

**146**

### FINDINGS OF FACT AND CONCLUSIONS OF LAW RE MOTION FOR IN REM RELIEF FROM THE AUTOMATIC STAY

W. RICHARD LEE, Bankruptcy Judge.

Before the court is a Motion for Relief from the Automatic Stay Combined with In Rem Relief filed by the County of Fresno (the "County"). The County seeks relief to conduct a tax sale of real property. Golden State Capital Corp. (the "Debtor") is not represented by an attorney and did not respond to the Motion.[1] The matter was heard on September 23, 2004. Richard H. Chasen, Esq., appeared on behalf of the County. Mark Pope, Esq., Assistant U.S. Trustee appeared for the United States Trustee. Also present was Eddie Mendrin ("Mendrin"), a purported principal and agent for the Debtor. Following the hearing, this court granted relief to the County to conduct a tax sale on or after December 15, 2004. The court took the request for in rem relief under submission.

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and 11 U.S.C. §§ 105 & 362. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (G) & (O). The following constitutes the court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. For the reasons set forth below, the County's motion for in rem relief from the automatic stay will be granted.

1. Local Rule 83–183(a) of the United States District Court, Eastern District of California provides, "[a] corporation or other entity may appear only by an attorney." Rule 83–183 is made applicable to bankruptcy proceedings by Rule 1001–1(c) of the Local Rules of Practice for the United States Bankruptcy Court, Eastern District of California.

2. The Office of the United States Trustee is charged with supervising the administration of bankruptcy cases. 28 U.S.C § 586(a)(3).

### Findings of Fact

The County has a statutory tax lien against a parcel of real property located at 6101 N. Golden State Blvd., Fresno, California 93722 (the "Property"). The County's records list Golden State Capital Corp. as the assessed owner of the Property. The County's efforts to sell the Property relate to unpaid property taxes dating back more than 14 years. The Debtor and its predecessors in title, all of which appear to be controlled by Mendrin, have successfully avoided paying any real property taxes assessed against the Property for the 1989–90 through 2003–04 tax years. As of September 2004, the delinquent taxes, penalties and costs assessed against the Property total in excess of $90,000. The County has attempted to conduct a tax sale of this Property at least 11 times over the last 8 years, however, all of those sales have been "stayed" by a series of bankruptcy filings in various courts and in the names of different debtors, each of which appears to have some relationship to Mendrin.[2]

■ The Property was first scheduled for a tax sale on March 1, 1996.[3] The County withdrew that sale when the Tax Collector received a "Notice of Automatic Stay" for the bankruptcy of Western Nevada Equipment, Inc. aka Golden State Capital Corp. filed in the Northern District of California. That notice was signed by Mendrin and, like all of the other no-

The United States Trustee contends that Mendrin has actually been involved in 22 bankruptcy filings, either as the debtor, or as the principal in some other form of bankruptcy entity.

3. Under California law, real property taxes must be in default for at least five years before the County can commence proceedings to sell the property. California Revenue and Taxation Code § 3691.

tices described below, it contained some reference suggesting that the Debtor held an interest in the Property.

The next tax sale was scheduled for March 2000. In mid-February 2000, Mendrin delivered a "Notice of Automatic Stay" indicating that Casa de Robles aka Golden State Capital Corp. held an interest in the Property and had filed bankruptcy in the Northern District of California. The County postponed that sale until May 3, 2000.

On May 2, 2000, Mendrin delivered another "Notice of Automatic Stay" indicating that Golden State Capital Corp. had filed a petition for chapter 11 relief in the Eastern District of California. In June 2000, the court granted relief from the automatic stay, subsequently dismissed the case, and barred the Debtor from filing again for 180 days.

The County rescheduled its tax sale in November 2000. Immediately before commencement of the sale, Mendrin delivered another "Notice of Automatic Stay." This time the debtor was Commonwealth Trust, and the petition was filed in the Northern District of California. Attached to the Notice was copy of a grant deed recorded two days earlier transferring the Property from Golden State Capital Corp. to the new debtor. The bankruptcy case was dismissed in March 2001.

A special tax sale was set for November 29, 2001. Days prior to the sale, Mary Mendrin delivered to the County a "Notice of the Automatic Stay" relating to a chapter 13 petition, this time filed by Mendrin, aka Commonwealth Trust. That petition was filed on November 13, 2001, in the Northern District of California. The tax sale was postponed until December 6, 2001. The court granted relief from the automatic stay on December 4, 2001, however, the order did not become effective in time for the County to conduct its sale.

The County rescheduled the tax sale for March 4, 2002. In mid-January, the County received notice of another chapter 13 petition filed in the Northern District of California by Mendrin with Commonwealth Trust, Casa de Robles, and Lotus Estates listed as akas for the debtor Mendrin.

Before the County could schedule a special tax sale, Mendrin filed another chapter 13 case in the Northern District of California, San Jose Division. On January 30, 2003, the court dismissed this case with prejudice, barred Mendrin from filing another bankruptcy petition for 180 days, and permanently barred Mendrin from refiling without permission of the court.

The County scheduled the next tax sale for March 3, 2003. On February 28, 2003, Mendrin delivered a "Notice of Automatic Stay," relating to a purported chapter 13 case filed in the Eastern District of California on behalf of Pacific Crest Investment Development, dba Commonwealth Trust, Casa de Robles, and Lotus Estates. Mendrin had actually filed a petition for chapter 11 relief. The petition listed Golden State Capital Corp. as a "joint debtor." This case was dismissed on motion of the United States Trustee on March 18, 2003.

The tax sale was rescheduled for April 30, 2003. On April 29, 2003, Mendrin delivered a "Notice of Automatic Stay" based on another chapter 13 petition filed by Mendrin in the Eastern District of California on behalf of Commonwealth Trust, a Business Trust, and Lotus Estates, a Business Trust. This bankruptcy case was dismissed on May 22, 2003.

The tax sale was rescheduled for March 1, 2004. On February 27, 2004, Mary Mendrin delivered to the County another "Notice of Automatic Stay" relating to a chapter 13 petition filed in the Central District of California, Santa Barbara Divi-

sion, on behalf of Commonwealth Trust/Lotus Trust dba Golden State Capital Corp. and Pacific Crest Investment and Development, Inc. The County postponed the tax sale until April 20, 2004, to seek relief from the automatic stay. This bankruptcy was dismissed on March 22, 2004.

· On April 19, 2004, the County received a "Notice of Automatic Stay" relating to a chapter 11 petition filed in the Central District of California, Santa Barbara Division. The debtor in this case was Pacific Crest Investment and Development, Inc. dba Golden State Capital Corp. and Commonwealth Trust/Lotus Trust. The bankruptcy court dismissed the case on April 29, 2004, and barred the debtor from refiling for 180 days.

On April 21, 2004, Mendrin delivered notice that Lotus Trust/Commonwealth Trust, dba Golden State Capital Corp. had filed a chapter 13 petition in the Eastern District of California. The Property was again removed from the tax sale. That case was dismissed on May 18, 2004, and the debtor was permanently barred from filing another bankruptcy petition.

That brings us to the present case which was filed by Mendrin on August 19, 2004, one day before the latest scheduled tax sale. This petition was signed by Mary Mendrin in her capacity as vice-president of Golden State Capital Corp.[4]

**Conclusions of Law**

■ Enough is enough! Mendrin has successfully avoided paying taxes assessed against the Property for more than 14 years. In so doing, Mendrin has egregiously abused the bankruptcy system. This case screams for extraordinary relief.

The County Tax Collector has a duty to sell real property when the defaulted taxes have not been redeemed for five years or more. Cal.Rev. & T.Code § 1391(a). The County has asked the court for in rem relief that would exclusively apply to the Property so that it may fulfill that responsibility. Without some creative relief, the next tax sale will most certainly be interrupted by yet another Mendrin-contrived bankruptcy proceeding filed in the name of possibly another debtor in possibly another court.

■ Through multiple bankruptcy proceedings, Mendrin has never confirmed a plan of reorganization to actually pay the real property taxes. The skeleton schedules filed in this case show that the Debtor does not have any creditors but the County and two other "governmental" entities, the City of Fresno and the Fresno County Superior Court.[5] This Debtor has no apparent business activity. It is abundantly clear to this court that Mendrin has no intention of paying the property taxes unless, and until he has literally no other choice. Mendrin certainly will try to find some menacing way to frustrate any relief that this court may fashion. The court has the power to order extraordinary relief under 11 U.S.C. § 105(a), which provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this

---

4. The court takes judicial notice of the fact that this Debtor is not registered in California as a corporation, foreign, or domestic, according to the records available on the California Secretary of State's Internet Website. The Debtor's protection includes a "Written Consent of Directors of Golden State Capital Corp.," signed only by Mendrin, which indicates that the Debtor is a Delaware Corpora-

tion. The County produced a certificate from the Delaware Secretary of State indicating that Golden State Capital Corp. became "inoperative and void" on March 1, 1995, for nonpayment of taxes.

5. The docket in this case reveals that the Debtor also failed to appear at the scheduled meeting of creditors.

title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

■■■■ The prescription of "any order . . . that is necessary" is not without limitation, however. "Bankruptcy courts are not authorized in the name of equity to make wholesale substitution of underlying law controlling the validity of creditors' entitlements, but are limited to what the Bankruptcy Code itself provides." *Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15, 24–25, 120 S.Ct. 1951, 1957, 147 L.Ed.2d 13 (2000) (citations omitted). The bankruptcy court may not "ignore specific statutory mandates" in the exercise of its equitable powers. *In re Geothermal Resources Intern., Inc.* 93 F.3d 648, 651 (9th Cir.1996). Nor may the court apply equitable principles in a "freewheeling fashion." *Matter of Tucson Cab Co., Inc.* 789 F.2d 701, 704 (9th Cir.1986). On the other hand, the bankruptcy court is a court of equity and as such should refuse to invoke equitable principles and doctrines "only where their application would be 'inconsistent' with the Bankruptcy Code." *In re Beaty*, 306 F.3d 914, 922 (9th Cir.2002) (citations omitted).

■■■■ The automatic stay that takes effect under 11 U.S.C. § 362 upon the filing of a petition for bankruptcy relief is a statutory protection that the court cannot lightly disregard. "The purpose of the automatic stay is to give the debtor a breathing spell from his creditors, to stop all collection efforts, harassment and foreclosure actions." *Matter of Roach*, 660 F.2d 1316, 1318 (9th Cir.1981) *citing* Notes of Committee on the Judiciary, Sen. Rep.No.989, 95th Cong., 2d Sess. 54, *reprinted* in [1978] U.S.Code Cong. & Ad. News 5787, 5840. The automatic stay is primarily for the protection of the debtor and the interest of the creditors is a secondary consideration. *Lynch v. Johns–Manville Sales Corp.*, 710 F.2d 1194, 1197 (6th Cir.1983).

■■■■ The protections of the Bankruptcy Code are limited, however, to the "honest but unfortunate debtor." *Grogan v. Garner*, 498 U.S. 279, 287, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991). A debtor does not have a constitutional or fundamental right to a discharge in bankruptcy. *Id.* at 287, 111 S.Ct. 654. Similarly, the automatic stay should not be viewed as a "right," but more as a "privilege" which may be denied to petitioners who abuse it. *In re Tolbert*, 258 B.R. 387, 390 (Bankr. W.D.Mo.2001).

Other bankruptcy courts have found that the filing of multiple bankruptcy petitions merely to invoke the automatic stay is both an abuse of process and a matter of bad faith. *See Matter of Inesta Quinones*, 73 B.R. 333, 338 (Bankr.D.P.R.1987); *see also In re Kinney*, 51 B.R. 840, 845 (Bankr.C.D.Cal.1985). The accepted response to abuse of process or bad faith is to dismiss the case, however, when the petitioner's goal is to serially invoke the automatic stay to prevent some action by a creditor, mere dismissal will not be sufficient. *See generally In re Yimam*, 214 B.R. 463, 465 (Bankr.D.Md.1997). In these extraordinary circumstances, it is appropriate for the court to "implement an appropriate order to prevent the continuing abuse of the bankruptcy process" pursuant to 11 U.S.C. § 105(a).[6] *Id.*

---

6. The United States Trustee has suggested that he may seek contempt sanctions against Mendrin. As the court has noted above, however, mere dismissal will not address the

An order for in rem relief would be an extraordinary use of the court's power, but it is not without precedent. In *Great Western Bank v. Snow (In re Snow)*, 201 B.R. 968 (Bankr.C.D.Cal.1996), Judge Bufford outlined the basis for granting such relief, drawing on the common law doctrine of equitable servitudes. 201 B.R. at 972–74. In *Snow*, a secured creditor sought in rem relief when its efforts to foreclose a lien against real property were frustrated by serial use of the automatic stay. *Id.* at 971. After the court granted relief from the automatic stay as to one debtor, the creditor found that the property had been transferred to another debtor who also sought bankruptcy protection. *Id.* The creditor sought relief that would be binding for 180 days "in any and all Chapter 7, 11 and 13 cases, as to the property and as to this debtor and his transferees, assigns and/or co-owners." *Id.*

After analyzing the law of equitable servitudes, the court in *Snow* concluded that in rem relief was warranted. The court viewed in rem relief as a nontraditional form of equitable servitude that would run with the land for the benefit of the creditor and that would bind all subsequent transferees of the property for a specific period of time. *Id.* at 974.[7] The court cautioned that in rem relief must be narrowly drawn, limited to achieve its purpose without unduly burdening the land, and properly recorded in the county records. *Id.* at 974–75.

### Conclusion

This court is persuaded by the egregious history which precedes this case and

problem, and contempt sanctions will not offer relief on the motion before the court.

7. The *Snow* court denied the creditor's request for in rem relief as to any co-owners of the property on due process grounds. The court also denied the request for an injunc-

Judge Bufford's analysis in *Snow*, that an in rem order for relief from the automatic stay is both appropriate and necessary. Mendrin has abused the bankruptcy system for the sole purpose of interfering with performance of the County's statutory responsibility to collect property taxes. Mendrin has shown obvious contempt for the bankruptcy courts that he has run to for protection. Nothing short of extraordinary relief will serve to protect the bankruptcy system. The County desires to complete its tax sale which has been renoticed to take place sometime on or shortly after December 15, 2004. To prevent further certain abuse by Mendrin, the County's motion for in rem relief from the automatic stay will be GRANTED. A separate order will be entered that will both modify the automatic stay for the County and bind all subsequent transferees of the Property for a limited time.

tion against subsequent transfers of the property because the creditor did not bring an adversary proceeding for injunctive relief and because injunctive relief appeared to be unnecessary in light of the grant of in rem relief.