In re Mentwab J. YIMAM, Debtor.

Bankruptcy No. 97–1–4863–PM.

United States Bankruptcy Court, D. Maryland, at Greenbelt.

Aug. 12, 1997.

Thomas Lackey, Bowie, MD, Chapter 13 Trustee.

Bradshaw Rost, Washington, DC, for Wilshire Credit Corporation.

## MEMORANDUM OF DECISION
### (Order Conditioning Dismissal of Case)

PAUL MANNES, Chief Judge.

This case came before the court on July 9, 1997, on (1) confirmation of debtor's Chapter 13 plan filed May 16, 1997, (2) Wilshire Credit Corporation's ("Wilshire") motion to dismiss and for an order enjoining the debtor and her husband, Makonnen Yimam, from filing further bankruptcy cases, and (3) the Chapter 13 Trustee's motion to dismiss based upon debtor's failure to attend the meeting of creditors held under § 341(a) of the Bankruptcy Code. Wilshire filed a motion for relief from the automatic stay of 11 U.S.C. § 362(a) on June 30, 1997, that was scheduled for hearing on July 28, 1997. Debtor did not oppose that motion.

The debtor did not appear for the confirmation hearing or the meeting of creditors held pursuant to Section 341 of the Bankruptcy Code on June 20, 1997. Debtor's appearance at the meeting of creditors is mandated by Section 343 of the Bankruptcy Code. Local Bankruptcy Rule 3015–2 requires debtor's appearance at the confirmation hearing, unless excused.

Because of continuing abuse of the privilege of filing under Title 11 of the United States Code·by debtor and her spouse, the court will enter an order dismissing the case on the Chapter 13 Trustee's motion and prohibiting the triggering of the stay of 11 U.S.C. § 362(a) with respect to the real property that is the subject of Wilshire's motion

1. This holding was overruled by § 305 of the Bankruptcy Reform Act of 1994 with respect to agreements entered into after October 22, 1994.

for relief from stay by a bankruptcy case filed by any entity before March 18, 1998. Wilshire's motion to dismiss is moot. Its motion for an injunction is procedurally defective. Federal Rule of Bankruptcy Procedure 7001(7).

## BACKGROUND

The debtor filed this bankruptcy case under Chapter 13 on May 1, 1997. The case was filed to thwart a scheduled May 5, 1997, foreclosure sale of the residence owned by the debtor and her spouse, Makonnen Yimam, located at 8810 Falls Road, Potomac, Maryland. The property is scheduled as having a value of $1 million. Debtor's plan filed May 16, 1997, provided funding of $1,700.00 a month for 60 months, a total of $102,000. Debtor's plan provides a payout to the secured creditor of $95,000 after payment of the statutory fees to the Chapter 13 Trustee payable under 28 U.S.C. § 586(e) of approximately $7,000. According to debtor's Schedules I and J, the Yimams' gross income is $9,000 a month, with the only deduction from income being self-employment taxes of $600. The court need not dwell on the fact that the Yimams' self-employment tax imposed under § 1401 of the Internal Revenue Code is grossly understated.

Wilshire, the holder of a note secured by a deed of trust on the subject property, filed a proof of claim in the amount of $888,900.01 and stating arrearages of $362,045. The plan must provide for curing of that default within a maximum of 60-months. 11 U.S.C. § 1322(b)(3) and 1322(d). Pre-confirmation and post-confirmation interest on the arrearages is required as to this oversecured creditor under the holding of the Supreme Court in the case of *Rake v. Wade*, 508 U.S. 464, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993).[1] The court will assume for the purpose of this discussion that interest amounts to $60,000. Debtor's plan must propose payments sufficient to pay out $422,000 over a five-year period or approximately $7,000 a month.

Thus, to save the home from foreclosure, debtor must maintain the current monthly

*In re Johnson*, 203 B.R. 775, 777 n. 3 (Bankr. M.D.Fla.1996).

payments to Wilshire scheduled on Schedule I of $5,600 a month and make plan payments of $7,000 a month, a total of $12,600 a month. Such a plan is objectively futile considering the Yimams' income of $9,000 a month and disregarding expenses for utilities, food, transportation and clothing.

The objective futility of the plan is demonstrated by the fact that the debtor and spouse have not made any payments to the holder of the note secured by the mortgage since a payment accruing for the month of June, 1992.

How then have debtor and her spouse remained in this property for more than five years without any payment to the mortgage holder? The answer is that between them they have filed seven bankruptcy cases, all designed to forestall creditor action. The following is a chronology of the bankruptcy filings by Mentwab Yimam and her husband, Mekonnen Yimam:

1. 93–1–1004–PM (11)          2/23/93          Makonnen Yimam
   Dismissed 12/9/93 subject to 11 U.S.C. § 109(g) on debtor's motion.

2. 94–1–0786–DK (11)          2/18/94          Mentwab Y. Yim-
                                                 am
   9/9/94 Consent Order on motion for relief from stay filed by GE Capital.
   Dismissed 10/26/94 on United States Trustee's motion.

3. 95–1–0190–PM (13)          1/13./95          Makonnen Yimam
   Dismissed 4/18/95 on debtor's motion.

4. 95–1–6462–DK (13)          10/18/95          Mentwab Y. Yim-
                                                 am
   Dismissed 1/30/96 subject to 11 U.S.C. § 109(g) on debtor's motion.

5. 96–1–2153–DK (13)          3/26/96          Makonnen Yimam
   Dismissed 4/28/96 on debtor's motion.

6. 96–1–8546–DK (13)          10/16/96          Makonnen Yimam
   Dismissed 2/12/97 on debtor's motion.

7. 97–1–4863–PM (13)          5/1/97          Mentwab Yimam

---

The court finds that there has been a continuous use of the bankruptcy system for the purpose of forestalling foreclosure.

Aside from the objective futility of any plan offered by the Yimams, debtor made no effort to prosecute this bankruptcy case. Nothing prevents the debtor's husband, Makonnen Yimam, from filing his bankruptcy case and continue the exercise after modification of the stay as to Wilshire.

What then is the remedy to forestall the Yimams' continuing abuse of the bankruptcy process? Through June 30, 1997, the Yimams are said to be five (5) years in arrears in payments under the note secured by the deed of trust on their residence. Considering the Yimams' scheduled earnings, it is impossible for them to propose any plan in good faith that would enable them to retain their residence. Furthermore, a Chapter 13 plan based on a proposed sale of the property offers the same trap for the secured creditor, because the Yimams would be free to dismiss that case at any time. 11 U.S.C. § 1307(b).

Issues such as those discussed in consideration of dismissal under § 707(b) of the Bankruptcy Code, based upon a substantial abuse of the bankruptcy process, have no application here. *See generally,* L.A. Young, *The Increasing Impact of Bankruptcy Code Section 707(b), 45 Bus. Law.* 2743 (1990); I.A. Breitowitz, *New Developments in Consumer Bankruptcies: Chapter 7 Dismissal on the Basis of "Substantial Abuse,"* 59 Am. Bankr.L.J. 327 (1985), 60 Am.Bankr.L.J. 33 (1986). Section 707(b) is limited to cases under Chapter 7. Dismissal leads only to another filing by debtor's spouse.

▬ Nonetheless, this court has the power and the duty to implement an appropriate order to prevent the continuing abuse of the bankruptcy process by the Yimams. 11 U.S.C. § 105(a) provides:

### § 105. Power of court.

(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

In the case of *In re Snow (Great Western Bank v. Snow)* 201 B.R. 968 (Bankr.C.D.Cal. 1996), the Honorable Samuel L. Bufford of the United States Bankruptcy Court for the Central District of California, demonstrated in a scholarly opinion that the Bankruptcy Court had the authority to issue an *in rem* order that operated as an equitable servitude on property to preclude the debtor and his successors from taking advantage of the automatic stay of 11 U.S.C. § 362(a) for a period sufficient to enable the creditor holding the secured claim to consummate a foreclosure.

In *Snow*, Judge Bufford dealt with a refinement of abuse of the bankruptcy process where the original obligor transfers a fractional interest in the subject property before a foreclosure, usually by a quit claim deed. These deeds are generally granted for no consideration and are likewise put on record to forestall foreclosure. For example, if Snow White were to own the Yimams' property in Potomac, Maryland, and she was behind on her mortgage payments, she could transfer a 1% interest to Doc. Doc would file his bankruptcy case and stop the foreclosure. Dopey, Grumpy, Happy, Sleepy, and Sneezy could likewise receive an interest and file petitions. In other words, a debtor willing to convey fractional interests to third

parties, can stave off foreclosure for a considerable period.

The Bankruptcy Code was created for the honest debtor. The Yimams cannot pay the arrearages on their debt to the holder of the note secured by the deed of trust. Since the last filing, they made no current payments. Faced with a similar problem, Judge Bufford created what he termed an equitable servitude. The court will not get enmeshed in the arcane terminology of the ancient law of real property.[2] Whether what the court imposes is called an equitable servitude, a covenant running with the land, or a restraint on alienation, the result will be the same—the prohibition of any bankruptcy filing, voluntary or involuntary, that will impose the automatic stay an eighth time as to the subject real property. In *Snow*, Judge Bufford noted:

> Equitable servitudes are not limited to those expressed in an agreement with the owner of the servient estate. An equitable servitude may be created by implication, by necessity, by implied reciprocity, by estoppel in rem, or by prescription. See generally, Uriel Reichman, Toward a Unified Concept of Servitudes, 55 S.CAL. L.REV. 1177, 1242 (1982)
>
> \*　\*　\*　\*　\*　\*
>
> The Court finds that such an equitable servitude may be created by court order. The order is sufficiently like an equitable servitude that it may bind subsequent purchasers of the property just like an equitable servitude, even though these purchasers are not before the Court and have not even been determined at the present time. The Court finds it appropriate to extend the law of equitable servitudes to such a servitude imposed by a court on real property, so that it binds subsequent owners.

Such an order fits squarely within the reason for the enforcement of equitable servitudes, and serves the policy for the recognition of such servitudes. The fundamental function of an equitable servitude is to transfer an owner's entitlements, other than possession, for the efficient utilization of land.

---

**2.** "[T]he fundamental basis for the doctrine is the inability of the subsequent possessor or user of the land to set up the defense at law of purchaser without notice." Edward H. Warren, "The Enforcement of Equitable Servitudes in Land," 28 Va. L.Rev. 951, 971 (1942).

Reichman, supra, at 1232. Given the facts of this case, it is the Court's judgment that the efficient utilization of the property here at issue will be best promoted by permitting Great Western to proceed with its foreclosure sale unimpeded by a further automatic stay resulting from the filing of a bankruptcy case by any subsequent owner of the property at issue for the next 180 days.

The doctrine of equitable servitudes has long been recognized in Maryland. Courts have enforced these restrictions by way of injunction, whether or not the covenant was found to be running with the land. *See Newbold v. Peabody Heights Co.*, 70 Md. 493, 502, 17 A. 372 (1889). The Court of Special Appeals of Maryland in *Sanitary Facilities II, Inc. v. Blum*, 22 Md.App. 90, 322 A.2d 228, 235 (1974), quoting from Tiffany, *Real Property* (3rd ed.), § 854, p. 455, noted:

"An important test for distinguishing a real or running covenant from a merely personal or collateral one, is whether or not the covenant so closely relates to the land or estate granted or its use, occupation or enjoyment, that it may be said to 'touch and concern' it. If the covenant, or its observance or breach, is thus related to the land, its burden or benefit passes with the ownership of the land; if it is not so related it will not accompany a transfer of ownership."

The court will pass an order imposing a restriction affecting the subject property for the period ending March 18, 1998. This is more than enough time to enable the party holding the secured claim to consummate foreclosure. The restriction does not prevent the debtor or her husband from filing another bankruptcy case when permitted by law to do so. Neither does it bar the sale or refinancing of the property. However, the filing of a bankruptcy case will not extend the protection of the automatic stay of § 362(a) of the Bankruptcy Code to the subject property and will not interfere with any foreclosure proceeding then pending or thereafter filed.

Debtor's case under Chapter 13 will be dismissed. Wilshire may cause a copy of this Order to be recorded among the land records of Montgomery County, Maryland.