**In re Michael Todd SELF, Debtor.**

**Bankruptcy No. 99–60201.**

United States Bankruptcy Court,
E.D. Texas,
Tyler Division.

Oct. 14, 1999.

Glenn Phillips, Hearne & Phillips, L.L.P., Kilgore, TX, for City National Bank.

Rodney S. Scott, Longview, TX, Michael Todd Self.

### MEMORANDUM OF DECISION GRANTING IN PART AND DENYING IN PART THE MOTION FOR RELIEF FROM AUTOMATIC STAY FILED BY CITY NATIONAL BANK

BILL PARKER, Bankruptcy Judge.

This matter is before the Court on final hearing of the "Motion of City National Bank for Relief from Automatic Stay or Adequate Protection" (the "Motion") filed by City National Bank ("CNB") in the above-referenced Chapter 13 case. The Motion seeks relief from the stay in order to allow CNB to pursue its state law remedies with regard to a 1992 Ford Ranger truck (the "Vehicle") and certain equipment itemized in the Motion (the "Equipment" and collectively referenced as the "Collateral") against which CNB asserts

that it holds a perfected security interest. The Court took the matter under advisement in order to consider CNB's demand that, for the duration of the period preceding the confirmation of the Debtor's proposed Chapter 13 plan and until such time as it begins receiving payments under such confirmed plan, the Debtor should be required to make direct adequate protection payments to CNB, in addition to making the required payments under his proposed Chapter 13 plan.

## I. *JURISDICTION.*

This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). The Court has authority to enter a final order in this contested matter since it constitutes a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(A), (G), and (O).

## II. *FACTUAL AND PROCEDURAL BACKGROUND*

Michael Self (the "Debtor") executed a promissory note to CNB on October 22, 1998 in the principal amount of $12,467.98. The note was given in renewal of certain earlier promissory notes under which CNB originally provided purchase-money financing for a 1992 Ford Ranger Supercab pickup and certain Equipment utilized in the Debtor's carpet care business.

Following the filing of the Debtor's voluntary petition for relief under Chapter 13 of the Bankruptcy Code, CNB filed a secured claim in this case in the amount of $12,394.19. CNB subsequently filed the present motion for relief from automatic stay against the Debtor, alleging that cause existed for stay relief under § 362(d)(1) of the Bankruptcy Code, including a lack of adequate protection. Alternatively, CNB alleged that the stay

should be terminated or modified under § 362(d)(2) because the Debtor possesses no equity in the Collateral and the Collateral is not necessary for an effective reorganization. The Debtor denied the existence of any grounds sufficient to warrant stay relief.

The Debtor's proposed Chapter 13 plan calls for a monthly payment of $390.00 per month for a period of forty-eight (48) months. From those plan payments, CNB's secured claim, assessed at $9,500.00, will be paid at the contractual rate of interest over a period of thirty-six (36) months. The proposed plan further provides that an administrative claim for attorneys' fees in the amount of $1,000.00 will be paid "through first available funds." Schedules I and J filed by the Debtor reflect a current net income of $2,816.67 and current expenditures of $2,308.00, leaving an excess income of $508.67, and during the pendency of the case, there has been no allegation by the Trustee of a missed plan payment by the Debtor.[1] However, because the Debtor is self-employed, the entry of a income deduction order is impractical and has not been sought by the Chapter 13 trustee.

There is no dispute that CNB holds a valid and subsisting claim against the Debtor and that the payment of such claim is secured by a valid and perfected lien upon the Collateral. There is also no dispute that the Vehicle is covered by full coverage insurance, which lists CNB as the lienholder and/or loss payee and that the Debtor is current in his payments to the Chapter 13 Trustee under his proposed plan which addresses the secured claim of CNB.

With regard to the value of the Collateral, the parties presented divergent opinions[2] as to the value of the Equipment.

---

1. The Trustee had filed a motion to dismiss the case on or about the time of the hearing of this Motion for the Debtor's failure to file amended schedules; however, upon the filing of such schedules, the motion to dismiss was withdrawn.

2. Actually, the evidence was presented in ranges of values. The Debtor claimed that the Equipment was worth $1,200–$2,500, while the Bank's representative asserted that the proper value was between $4,000–$5,000.

However, that particular dispute need not be resolved since, due to the parties' agreement that the value of the Vehicle is approximately $6,900.00, the Court finds that there is no equity currently existing in the Collateral under either party's evidentiary presentation. It is undisputed that the Debtor is utilizing all of the Collateral in furtherance of his business activities; however, no evidence was presented concerning the rate, if any, by which the Vehicle or the Equipment is depreciating.

CNB essentially admitted at the hearing that, notwithstanding the allegations of CNB's Motion, the Collateral was necessary to the ongoing success of the Debtor's business, thereby undermining any prayer for relief under § 362(d)(2). Its representative, Ms. Nichols, candidly testified that CNB did not really desire to repossess the Collateral, but instead was seeking an order directing the Debtor to make interim adequate protection payments to CNB pending the confirmation of the Debtor's Chapter 13 plan. In response, the Debtor asserts that CNB's interests are adequately protected because the Vehicle is insured, his plan proposes to pay CNB's secured claim in full at the contractual rate of interest, and he is current on his plan payments.

### III. *DISCUSSION*

§ 362(d) of the Bankruptcy Code provides that:

[O]n request of a party in interest, and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay

(1) for cause, including lack of adequate protection of an interest in property of such party in interest;

(2) with respect to a stay of an act against property under subsection (a) of this section if:

(A) the debtor does not have any equity in such property; and

(B) such property is not necessary to an effective reorganization.

In stay relief litigation, though the party opposing stay relief, usually the debtor, has the ultimate burden of persuasion (or the risk of non-persuasion) as to all stay issues except the existence of equity pursuant to 11 U.S.C. § 362(g), the party requesting relief from the stay must sustain an initial burden of production or going forward with the evidence to establish that a *prima facie* case for relief exists before the respondent is obligated to go forward with its proof. *See generally, In re Kowalsky*, 235 B.R. 590, 594 (Bankr. E.D.Tex.1999), *citing Sonnax Industries, Inc. v. Tri–Component Products Corp. (In re Sonnax Industries, Inc.)*, 907 F.2d 1280 (2nd Cir.1990); *In re Powell*, 223 B.R. 225, 232 (Bankr.N.D.Ala.1998); and *Vincent Properties, Inc. v. Five Star Partners, L.P. (In re Five Star Partners, L.P.)*, 193 B.R. 603 (N.D.Ga.1996). If the movant fails to establish such a *prima facie* case for relief, the court should deny the relief requested. *In re Keene Corporation*, 171 B.R. 180, 182 (Bankr.S.D.N.Y.1994).

The Movant's *prima facie* case under § 362(d)(2) in this case is established by the agreement of the parties. The Debtor acknowledged that CNB holds a valid claim which is secured by a valid and perfected lien and that he possesses no equity in the Collateral. *Kowalsky*, 235 B.R. at 594, *citing In re Elmira Litho, Inc.*, 174 B.R. 892, 900–01 (Bankr.S.D.N.Y. 1994) and other authorities (a secured creditor who seeks relief from the automatic stay under § 362(d)(2) has the burden to demonstrate (1) the amount of its claim, (2) that its claim is secured by a valid, perfected lien in property of the estate, and (3) that the debtor lacks equity in the property). Thus, the burden of persuasion shifted to the Debtor to demonstrate that the property is necessary for an effective reorganization. The Court finds that he sustained that burden by presenting uncontradicted testimony that the Collateral is used in his day-to-day

business activities and is essential to the continuation of such activities upon which the viability of the proposed plan rests. Such testimony was not contradicted by the Movant. Thus, the Debtor established that the Collateral is necessary for an effective reorganization which precludes the granting of stay relief under § 362(d)(2).

■ CNB also requested stay relief based upon § 362(d)(1), alleging that a lack of adequate protection of its interest in the Collateral constitutes "cause" for the granting of stay relief. To establish a *prima facie* case for cause due to a lack of adequate protection, a movant must initially demonstrate that it holds a claim, secured by a valid, perfected lien upon estate property, and that a·decline in the value of its collateral is either occurring or is threatened, against which the creditor is precluded from protecting its interests due to the existence of the automatic stay. Only upon presentation of such a *prima facie* case by a movant does the burden shift to the debtor-respondent to prove that the collateral is not declining in value or that the secured creditor is otherwise adequately protected. *See Kowalsky*, 235 B.R. at 595 and the cases cited therein.

A *prima facie* case for relief under § 362(d)(1) was established by the agreement of the parties. It is uncontested that CNB holds a claim secured by the Collateral. It is further undisputed that the Collateral is being utilized in the Debtor's business. Such continued use virtually always creates a decline in the value of collateral to some degree, however slight, and such continued use by this Debtor imposes upon him the ultimate burden of persuasion to establish that CNB's interest in the Collateral is adequately protected.

■ The determination of whether a creditor's interest is adequately protected is not an exact science nor does it involve a precise arithmetic computation. Rather, it is pragmatic and synthetic, requiring a court to balance all relevant factors in a particular case, including the value of the collateral, whether the collateral is likely to depreciate over time, the debtor's prospects for a successful reorganization and the debtor's performance under the plan. *In re Olick*, 221 B.R. 146, 161 (Bankr. E.D.Pa.1998). Other considerations may include the balancing of hardships between the parties and whether the creditor's property interest is being unduly jeopardized. *Id.*

■ The Debtor sought to sustain its burden to demonstrate that CNB's interest in the Collateral is adequately protected by establishing that, in addition to maintaining proper insurance on the Vehicle to protect against a catastrophic decline in value, he is current on payments under his proposed plan which contemplates the complete satisfaction of CNB's allowed secured claim. The Debtor claims that these elements constitute adequate protection of CNB's interest and that the adequacy of such protection has historically been recognized by courts in this district for a number of years. Conversely, CNB insists that the only means by which its interests can be adequately protected is the entry of an order directing the Debtor to make interim adequate protection payments to CNB in the pre-confirmation period. This Court has discussed in a recent opinion[3] the difficulty of reconciling the conflicting policies raised by the issue of direct adequate protection payments and the problems created by the allowance of such payments. While finding that the imposition of direct adequate protection payments was not an appropriate remedy in a Chapter 13 context, the Court granted additional protective relief for the benefit of the creditor in *Rogers*, when it was clear from the evidence presented that a meaningful decline in the value of the collateral

---

**3.** *In re Rogers,* 239 B.R. 883 (Bankr.E.D.Tex. 1999); arising from a ruling upon a motion for relief from automatic stay in the case of Lisa Michelle Rogers, case no. 98–62410.

was occurring in the post-confirmation period. There has been no such evidentiary showing in this case to justify the granting of such additional protections to CNB.

CNB argued at the hearing that the Debtor's offer of adequate protection is insufficient because of the increasing age of the Collateral and the risk that the Debtor's plan will not succeed. However, there is no evidentiary basis in the record to support either contention. CNB assented to some degree to the lesser degree of protection offered by this aging collateral prior to the filing of the bankruptcy. It is undisputed that CNB renewed the notes for a two-year period in the fall of 1998 without conducting any type of inspection of the Collateral, notwithstanding the fact that the Vehicle was already approaching its seventh year of service and that the Equipment had been utilized by the Debtor for several years as well. More importantly, no evidence was presented to the Court to support the contention that the value of the Collateral, given its age, will decline to any appreciable degree during the pre-confirmation period.

Similarly, no evidentiary foundation was established from which this Court could reasonably conclude that the risk of failure in this particular Chapter 13 case is greater than that which exists in a typical Chapter 13 case. While it is true that the Debtor's self-employment effectively precludes the entry of a pre-confirmation income deduction order, the Debtor has performed his plan obligations to date and there is no hint that the Debtor will be unable to perform his financial obligations in the future. Obviously there is always a chance of a plan default, but there is no evidence upon which the Court could conclude that the risk assumed by CNB in this case is greater than that which Congress intended for a creditor to bear when it enacted the Chapter 13 process.

Upon consideration of the evidentiary record presented, the Court finds that the Debtor has sustained its burden to establish that CNB's interest in the Collateral is adequately protected by the maintenance of those protective provisions to which the Debtor has already assented and the Court further finds that no additional protective relief is warranted in this case.

## IV. CONCLUSION

Therefore, the Court orders that the Motion of City National Bank for Relief from the Automatic Stay is granted in part and denied in part and that the continuation of the automatic stay provided under 11 U.S.C. § 362(a) as to the Collateral is hereby conditioned upon the Debtor's fulfillment and maintenance of the following conditions, in order to provide adequate protection of CNB's interest in the Collateral as specified:

(1) that the Debtor will maintain a policy of full coverage insurance on the Vehicle which lists CNB as the lienholder and/or the loss payee at all times during the pendency of this case until such time as CNB's secured claim is paid in full;

(2) that the Debtor will allow no person to operate the Vehicle other than those persons listed as insured drivers under the policy of insurance covering such Vehicle; and

(3) that the Debtor shall at all times remain current in his payments to the Chapter 13 Trustee pursuant to his proposed Chapter 13 Plan.

Should the Debtor fail to maintain any of these conditions, CNB shall provide written notice of such default to the Debtor and his attorney by certified United States Mail, return receipt requested. If the Debtor fails to cure such default within ten (10) days of receipt of such notice, then the automatic stay shall automatically terminate without further notice, hearing, or order of this Court and CNB shall file a certificate with the Court to evidence the termination of the stay. Further, the Debtor shall be allowed only one opportunity to cure any default of the conditions set forth by this Court. Upon the second incidence of default, the automatic stay

shall automatically terminate without further notice, hearing, or order of this Court and CNB shall file a certificate with the Court to evidence the termination of the stay.

This memorandum of decision constitutes the Court's findings of fact and conclusions of law[4] pursuant to Fed.R.Civ.P. 52, as incorporated into contested matters in bankruptcy cases by Fed.R.Bankr.P. 7052 and 9014. A separate order will be entered which is consistent with this opinion.

---

**4.** To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The Court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.