**In re Karen ABDUL MUHAIMIN, Debtor.**

**In re Gail Brown a/k/a Gail A. Brown, Debtor.**

**In re Raymond Carl Flythe, Debtor.**

Nos. 05–90314–SD, 05–90230–SD, 05–90128–SD.

United States Bankruptcy Court, D. Maryland.

April 25, 2006.

Sherrie T. Howell, Baltimore, Maryland, for Muhaimin.

Robert B. Greenwalt, Baltimore, Maryland, for Brown.

## MEMORANDUM AND ORDER AS TO REAL PROPERTY DENYING RELIEF UNDER 11 U.S.C. § 362(d)(4) AND GRANTING CERTAIN IN REM RELIEF

E. STEPHEN DERBY, Bankruptcy Judge.

The matter before the court in each of these three cases is a motion for relief from stay, accompanied by a request for relief under 11 U.S.C. § 362(d)(4) against residential real property owned, in whole or in part, by the Debtor. The requested relief also requires the court to examine the continued viability of *In re Yimam,* 214 B.R. 463 (Bankr.D.Md.1997) for the imposition of an equitable servitude upon the Debtors' property in cases filed under BAPCPA.[1] For the reasons stated herein, the court will deny the relief requested under 11 U.S.C. § 362(d)(4) as to each of

the movants, but will grant in rem relief in the Muhaimin case.

## I. RELEVANT FACTS

Each of these cases was filed after October 17, 2005 and is subject to the BAPCPA amendments. None of the Debtors appeared at the hearing set on the motion in her or his case, and each secured creditor's allegations were unrebutted. None of the creditors offered any documentary evidence or testimony in support of its motion, but each requested the court to take judicial notice of the record in the instant case and in prior cases filed in this court by the respective debtor and by the debtor's spouse. The court will take judicial notice of filings made in this court as described below.

*Karen Abdul Muhaimin, Case No. 05–90314–SD:*

Mrs. Muhaimin filed for relief under Chapter 13 on November 17, 2005, triggering the automatic stay under 11 U.S.C. § 362(a) and the co-Debtor stay under 11 U.S.C. § 1301(a) as to Mrs. Muhaimin's husband, Lawrence Muhaimin. Deutsche Motion, ¶ 5C. Deutsche Bank National Trust Co. ("Deutsche") filed its motion for relief from stay as to Mrs. and Mr. Muhaimin's residence at 809 Bradhurst Road, Baltimore, Maryland. Neither Mrs. or Mr. Muhaimin opposed Deutsche's Motion.

The instant case is the third proceeding filed in a 17 month period by Mrs. Muhaimin or Mr. Muhaimin. On July 21, 2004, Mrs. Muhaimin filed under Chapter 13, Case No. 04–27343–JS. The case was filed the day before a foreclosure sale set for July 22, 2004. Deutsche Motion, ¶ 5A. Deutsche entered into a consent order

---

1. The Bankruptcy Abuse and Prevention Consumer Protection Act of 2005, P.L. 109–8; 119 Stat. 37 ("BAPCPA") significantly amended a number of provisions of the Bankruptcy Code (11 U.S.C.) effective for cases filed on or after October 17, 2005, including 11 U.S.C. § 362(d) as outlined hereafter.

with Debtor relative to the automatic stay on December 27, 2004, and pursuant to an Amended Notice of Secured Creditor's Right to Commence Foreclosure, the automatic stay terminated on June 21, 2005. Case No. 04–27343, Dkt. Nos. 44, 50. The case was converted to a proceeding under Chapter 7 on August 10, 2005, and a discharge was entered on November 16, 2005. The case was closed on December 1, 2005. *Id.* at Dkt. Nos. 53, 58, 61.

Meanwhile, on August 4, 2005, Mr. Muhaimin filed under Chapter 13. Case No. 05–27416–DK. A foreclosure sale had been set for August 4, 2005, but it was stopped as a result of the filing. Deutsche Motion, ¶ 5B. The case was dismissed with prejudice on September 30, 2005;[2] and pursuant to the Order of Dismissal, Mr. Muhaimin was not eligible to file another bankruptcy case until March 30, 2006. *Id.* at Dkt. No. 19.

In the current bankruptcy, Case No. 05–90314, Mrs. Muhaimin filed her Chapter 13 Plan (Dkt. No. 8) which proposed to pay $150 per month over 60 months to cure a mortgage arrearage scheduled as $7,000.[3] However, Mrs. Muhaimin failed to obtain pre-petition credit counseling as required by BAPCPA § 109(h), and the court denied her Motion For Exemption from Credit Counseling. Dkt. No. 12. Her case was then dismissed for her failure to comply with MD Local Bankruptcy Rule 1002–1. Dkt. No. 18. The case has not been closed.

Dismissal of the case terminated the automatic stay and co-debtor stay as to Deutsche and all creditors. 11 U.S.C. §§ 362(c)(2)(B) and 1301(a)(2). The court retained jurisdiction, however, to consider Deutsche's request for imposition of an equitable servitude or relief under 11 U.S.C. § 362(d)(4), since that motion was pending at the time of dismissal and has not been withdrawn. *See In re Hardy,* 209 B.R. 371, 373 (Bankr.E.D.Va.1997)("Notwithstanding the fact that [debtor's] bankruptcy case is closed and all scheduled debts have been discharged, the Court retains jurisdiction over the debtor's case for certain purposes," including when a "party claims a right or remedy created by one of the specific Bankruptcy Code sections.") (citations omitted); *cf. Matter of Querner,* 7 F.3d 1199, 1201–02 (5th Cir.1993)(when main bankruptcy case dismissed or closed, court has discretion to retain jurisdiction or dismiss related proceedings).

*Gail Brown a/k/a Gail A. Brown, Case No. 05–90230-SD:*

Mrs. Brown filed for relief under Chapter 13 on November 7, 2005, triggering the automatic stay under 11 U.S.C. § 362(a) and the co-Debtor stay under 11 U.S.C. § 1301(a) for Mrs. Brown's husband, Charles Brown. A foreclosure sale of the property co-owned by Mrs. and Mr. Brown at 1337 Chapelview Drive, Odenton, Maryland was scheduled for December 8, 2005, but was stayed by the bankruptcy filing. Chase Motion, ¶ 13. Chase Home Finance, LLC ("Chase") filed a motion for

---

**2.** In a Line filing Debtor's Statement re Prior Bankruptcy Filings on Behalf of Karen Abdul Muhaimin in this case, Debtor contends Mr. Muhaimin's case was dismissed because of his incarceration, which prevented him from assisting counsel in the case. Case No. 05–90314, Dkt. No. 6.

**3.** Because Ms. Muhaimin obtained a Chapter 7 discharge in Case No. 04–27343, she was

not eligible for a discharge in the current case. BAPCPA § 1328(f)(1). Further, the debt owed to Deutsche was the only debt listed on Ms. Muhaimin's current bankruptcy schedules. Thus, completion of a confirmed Chapter 13 Plan would only allow Ms. Muhaimin to cure the pre-petition arrearage to Deutsche.

relief from stay as to the property. Neither Mrs. Brown nor Mr. Brown opposed Chase's motion.

The instant case is the third proceeding filed in a 20 month period by Mrs. Brown or Mr. Brown. On March 1, 2004, Mr. Brown filed under Chapter 13, Case No. 04–14861–SD. The case filing stayed foreclosure proceedings that had been initiated by Chase. Chase Motion, ¶ 5A. Chase entered into a consent order with Mr. Brown relative to the automatic stay on October 13, 2004, and pursuant to an Affidavit of Default filed October 27, 2004, the automatic stay terminated. However, as the co-debtor stay is a statutory creature springing from Mrs. Brown's bankruptcy, it applied by operation of law to Mr. Brown in this case, notwithstanding termination of the automatic stay under Section 362(a) in his own pending Chapter 13 case. *See* 11 U.S.C. § 1301(a). Mr. Brown's Chapter 13 case remains open, and it has neither been converted nor dismissed. Dkt. Nos. 32, 34.

On December 23, 2004, Mrs. Brown filed under Chapter 13, Case No. 04–38796–SD. The case filing stayed a foreclosure sale set for February 3, 2005. Chase Motion, ¶ 10. Chase moved for relief from stay as to the subject property on May 6, 2005. Chase entered into a consent order with Debtor modifying the automatic stay on August 18, 2005, and on the same date the case was dismissed on the Chapter 13 Trustee's Motion for Material Default in Plan Payments. *Id.* at Dkt. Nos. 16, 25, 26.

In the current bankruptcy, Case No. 05–90230, Mrs. Brown filed a Motion to Extend Automatic Stay under 11 U.S.C. § 362(c)(3) (Dkt. No. 13), which was denied. Dkt. No. 27. Thus, the automatic stay terminated as to all creditors. *See* 11 U.S.C. § 362(c)(3)(A). The Chapter 13 Trustee filed a Motion to Dismiss for failure to attend the Section 341 meeting of creditors (Dkt. No. 29), and the Court denied confirmation of Mrs. Brown's Chapter 13 Plan without leave to amend. Dkt. No. 32. The case was dismissed after Debtor's failure to confirm a plan. Dkt. No. 34. Upon dismissal the co-debtor stay terminated. 11 U.S.C. § 1301(a)(2). The current bankruptcy case has not been closed. The court retains jurisdiction to hear Chase's motion for relief under 11 U.S.C. § 362(d)(4).

*Raymond Flythe, Case No. 05–90128–SD:*

Mr. Flythe filed for bankruptcy relief under Chapter 13 on December 6, 2005, and the automatic stay went into effect under 11 U.S.C. § 362(a). The co-Debtor stay under 11 U.S.C. § 1301(a) also became applicable to the Estate of Mr. Flythe's former wife, Constance Flythe (the "Estate"). A foreclosure sale of the property co-owned by Mr. Flythe and the Estate at 551 East 38th Street, Baltimore, Maryland was scheduled for December 6, 2005, but was stayed by the bankruptcy filing. Community Motion, ¶ 3. The Community Development Administration ("Community") filed a motion for relief from stay as to the property. Mr. Flythe filed an opposition to Community's Motion, but he did not attend the hearing.

Case No. 05–90128 was the second proceeding filed in a five month period by Mr. Flythe. On June 2, 2005, Mr. Flythe filed under Chapter 13, Case No. 05–22812–SD. The case filing stayed foreclosure proceedings that had been initiated by Community. Community Motion, ¶ 3. Community filed a motion for relief from the automatic stay, and obtained an Order Terminating Automatic Stay on October 20, 2005. Dkt. No. 23. Although the court entered an Order denying confirmation without leave to amend on October 20, 2005 (Dkt. No. 21), the case was not closed until December 14, 2005. Dkt. No. 27. Thus, the

prior case was still pending when Mr. Flythe filed this second Chapter 13 case.

In the instant case, Mr. Flythe did not file a motion to extend the automatic stay under 11 U.S.C. § 362(c)(3)(B). As a result, the automatic stay terminated as a matter of law under 11 U.S.C. § 362(c)(3)(A). In addition, Mr. Flythe failed to file the required Chapter 13 Monthly Expenses and Disposable Income Form 22C. As a result, this case was automatically dismissed on the 46th day after the petition was filed by operation of 11 U.S.C. Section 521(i)(1). Dkt. No. 22. Upon dismissal the co-debtor stay terminated. 11 U.S.C. § 1301(a)(2). The current bankruptcy case has not been closed, and the court retains jurisdiction to hear Community's motion for relief under 11 U.S.C. § 362(d)(4).

## II. *ANALYSIS*

### A. EXCEPTION TO AUTOMATIC STAY UNDER BAPCPA § 362(d)(4)

 A creditor whose debt is secured by residential real property may move under 11 U.S.C. § 362(d) for relief from the automatic stay of Section 362(a) to foreclose its interest. BAPCPA added, *inter alia,* a new subsection to 11 U.S.C. § 362(d) that provides:

(d) On request of a party interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

* * * * * *

(4) with respect to a stay of an act against real property under subsection(a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of a petition was part of a scheme to delay, hinder, and defraud creditors that involved either—

(A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or

(B) multiple bankruptcy filings affecting such real property.

If recorded in compliance with applicable State laws governing notices of interests or liens in real property, an order entered under paragraph (4) shall be binding in any other case under this title purporting to affect such real property filed not later than 2 years after the date of the entry of such order by the court, except that a debtor in a subsequent case under this title may move for relief from such order based upon changed circumstances or for good cause shown, after notice and a hearing. Any Federal, State, or local governmental unit that accepts notices of interests or liens in real property shall accept any certified copy of an order described in this subsection for indexing and recording.

11 U.S.C. § 362(d)(4).[4] Section 362(d)(4) was "intended to reduce abusive filings". H.R. Rep. 109–31(I) at 69 (2005), U.S.Code Cong. & Admin.News 2005, pp. 88, 138.

---

4. BAPCPA provides a further enforcement provision for 11 U.S.C. § 362(d)(4). Under Section 362(b)(20), in any bankruptcy filing made within 2 years after the entry date of a Section 362(d)(4) order, the Section 362(a) stay shall not apply to "any act to enforce any lien against or security interest in real proper-ty" subject to a Section 362(d)(4) order against such real property. 11 U.S.C. § 362(b)(20). Only after notice and hearing, and after showing "changed circumstances or other good cause", may the court relieve a debtor from the effect of a Section 362(d)(4) order. *Id.*

### 1. *Elements Necessary for Relief Under BAPCPA Section 362(d)(4).*

■ To obtain Section 362(d)(4) relief, the court must find three elements to be present. First, Debtor's current bankruptcy filing must have been part of a scheme. The common meaning of scheme as applicable in this context is: "a plan or program of action; esp: a crafty or secret one." Webster's Ninth New College Dictionary (1991).

Second, the object of the scheme must be: "to delay, hinder *and* defraud" creditors. 11 U.S.C. § 362(d)(4)(emphasis added). Use of the word "and" differs from other Bankruptcy Code sections which afford relief upon a showing that actions were intended "... to hinder, delay, *or* defraud" a creditor. *See, e.g.,* 11 U.S.C. §§ 727(a)(2), 548(a) (emphasis added). *See also* Md.Code Ann., Commercial Law § 15–207 (applicable in bankruptcy cases under 11 U.S.C. § 544(b)).

■ Congressional use of the conjunctive "and" rather than the disjunctive "or" in BAPCPA § 362(d)(4) appears deliberate. The House Report specifically states that "cause for relief from the automatic stay may be established for a creditor whose claim is secured by an interest in real property, if the court finds that the filing of the bankruptcy case was part of a scheme to delay, hinder *and* defraud creditors...." H.R. REP. 109–31(I), at 69, U.S.Code Cong. & Admin.News 2005, pp. 88, 138 (emphasis added). Statutory construction, of course, "begins with an examination of the literal language of the statute." *Williams v. U.S. Merit Systems Protection Board,* 15 F.3d 46, 49 (4th Cir. 1994), *quoting United States v. Blackwell,* 946 F.2d 1049, 1052 (4th Cir.1991). Stat-

utes should be construed according to their plain and ordinary meaning absent explicit legislative intent to the contrary. *Williams v. U.S. Merit Systems Protection Board,* 15 F.3d at 49.

■ The word "and" is ordinarily accepted for its conjunctive connotation. *Id.; Hillman v. Internal Revenue Service,* 263 F.3d 338, 342. (4th Cir.2001); *see also In re DiPinto,* 336 B.R. 693, 696 (Bankr. E.D.Pa.2006)(in interpreting BAPCPA § 109(h)(3), elements are stated in the conjunctive, "meaning that each element must be satisfied before the Court can permit the extension of time" under BAPCPA § 109(h)(3) (citation omitted)).[5] The *Hillman* court outlined the "two extremely narrow exceptions" to the plain meaning rule as follows:

> The first exception applies when literal application of the statutory language at issue produces an outcome that is demonstrably at odds with clearly expressed congressional intent to the contrary. *Sigmon Coal Co. v. Apfel,* 226 F.3d 291, 304 (4th Cir.2000). The second exception implicated by the Hillmans' argument applies when literal application of the statutory language at issue "results in an outcome that can truly be characterized as absurd, i.e., that is so gross as to shock the general moral or common sense...." *Id.* (internal quotation marks omitted). If either of these exceptions apply, "then we can look beyond an unambiguous statute and consult legislative history to divine its meaning." *Id.* Again, the instances in which either of these exceptions to the Plain Meaning Rule apply "are, and should be, exceptionally rare." *Id.*

*Hillman v. Internal Revenue Service,* 263 F.3d 338, 342. (4th Cir.2001).

---

**5.** Rules of construction make clear that the use of "or" in the Bankruptcy Code is not exclusive. 11 U.S.C. § 102(5). There is no statutory rule of construction in the Bankruptcy Code for "and".

Neither of the *Hillman* exceptions apply to require the "and" between hinder and defraud to be understood other than in the conjunctive. First, there is no clearly expressed congressional intent to the contrary. Indeed, in the legislative history itself uses "and". H.R. 109–31(I), at 69. Second, while it may be easier for creditors to prove a scheme to delay, hinder or defraud in the disjunctive, requiring the three elements to be present by use of the conjunctive "and" is neither absurd or shocking to common sense, especially since Section 362(d)(4) relief extends for two years. Conversely, since delay is inherent with operation of the automatic stay that arises whenever a bankruptcy case is filed, it would be absurd to conclude that delay alone, in the disjunctive, would trigger the special relief under Section 362(d)(4). In sum, the plain meaning of Section 362(d)(4) is that "and" is to be read in the conjunctive. As a result, "the sole function of the courts is to enforce it according to its terms." *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989), *quoting Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917).[6]

To satisfy this second element for obtaining relief under BAPCPA § 362(d)(4), the court must find the filing of the petition commencing a bankruptcy case was part of a scheme to delay and to hinder and to defraud creditors. A common meaning of "delay" is to "postpone until a later time," while that for "hinder" is to "get in the way of." Webster's II New Riverside University Dictionary, at 358, 583 (1984). To "defraud" is defined as

to "take from by fraud." *Id.* at 357. The traditional elements for fraud are:

(1) that the debtor made the representations;

(2) that at the time the debtor knew the representations were false;

(3) that debtor made the representations with the intention and purpose of deceiving the creditor;

(4) that the creditor relied on such representations, and

(5) that the creditor sustained loss and damage as the proximate result of the representations having been made.

*In re Woodall,* 177 B.R. 517, 520 (Bankr. D.Md.1995); *In re Valdes,* 188 B.R. 533, 535 (Bankr.D.Md.1995); *see also Deckelbaum v. Cooter, Mangold, Tompert & Chapman,* 292 B.R. 536, 540 (D.Md.2003)(under Maryland law, to establish fraud, a party must show either an affirmative misrepresentation of a material fact or an intentional concealment of a material fact).

Third, the final element for Section 362(d)(4) relief is that the scheme "involved either" (a) the transfer of some interest in the real property without the secured creditor's consent or court approval, or (b) multiple bankruptcy filings affecting the property. Two plain meanings of "involve" are (1) to relate closely: connect and (2) to have within or as part of itself: include. Webster's Ninth New Collegiate Dictionary (1991). The transfer or the multiple filings thus must somehow be connected with or included in the scheme to delay, hinder and defraud creditors. Mul-

---

**6.** The recent decision of *In re TCR of Denver, LLC,* 338 B.R. 494 (Bankr.D.Colo.2006) in which the bankruptcy court concluded that "and" was used in the disjunctive in BAPCPA § 1112(b)(4) is distinguishable. In *TCR of Denver* the court found that reading "and" in the conjunctive would lead to an absurd result. *TCR of Denver,* 338 B.R. at 496. Further, the list of factors in Section 1129(b)(4) that constitute cause for dismissal under Sections 1112(b)(2) is preceded by the word "includes". The word "includes" generally suggests a disjunctive reading of the list that follows. *Id.* at 499.

tiple may mean many, numerous and, also, just more than one. *Id.*

Consequently, for Section 362(d)(4) relief to be granted in one of these cases, the court must find that the Debtor's filing of her or his bankruptcy petition was part of a plan or program of action to postpone and to get in the way of and to defraud creditors, that was connected to or included more than one or numerous bankruptcy filings that affected the subject property. In the cases at issue, each creditor has been affected by reimposition of the automatic stay to properties in which the debtors presumably held some interest.

### 2. *Burden of Proof Under BAPCPA § 362(d)(4).*

At first blush, the burden of proof for relief requested under Section 362(d)(4) appears to be controlled by the statute. Section 362(g) provides that: "[i]n any hearing under subsection [362](d) ... concerning relief from the [automatic] stay ... (1) the party requesting such relief has the burden on the issue of debtor's equity in the property; and (2) the party *opposing* such relief has the burden of proof *on all other issues.*" 11 U.S.C. §§ 362(g)(1) and (2) (emphasis added). Application of Section 362(g) thus dictates that the debtor would have the burden of proof on the elements for relief under Section 362(d)(4). Were it so simple. Because neither respondent answered or appeared in the Muhaimin and Brown cases, and because the Debtor in the Flythe case did not appear and offer proof, the question arises whether the movant creditors are entitled to the special BAPCPA § 362(d)(4) relief based on a failure of proof just because they asked for it. The answer is no, because there is no presumption of fraud in BAPCPA § 362(d)(4).

There is an apparent conflict between the allocation of proof in Section 362(g) and the statutory requirements for relief under Section 362(d)(4). For the court to grant relief under Section 362(d)(4) and thus trigger two years of prospective relief as to the subject real property, the court must find affirmatively that the three elements described previously, including fraud, are present. The precise language is: "if the court finds ...". For the court to make such an affirmative finding, it must have proof of the elements required to justify such relief.

In promulgating Section 362(d)(4), Congress did not create a statutory presumption of fraud. In enacting BAPCPA Congress demonstrated that it understood how to create a presumption because it created a presumption of a case being filed "not in good faith" under certain circumstances in BAPCPA §§ 362(c)(3)(c) and 362(c)(4)(D), and a presumption of "abuse" of the provisions of Chapter 7 in BAPCPA § 707(b)(2)(A). It thus appears that the structure and language of Section 362(d)(4) was deliberate and intended, rather than a mistake.

By seeking relief under BAPCPA § 362(d)(4), the creditor requests specific prospective protection, not only against the debtor but also binding every non-debtor, co-owner and subsequent owner of the property. If granted, Section 362(d)(4) relief would nullify the ability of the Debtor and any other third party with an interest in the property to obtain the benefits provided by the automatic stay in future bankruptcy cases for a period of two years.

Under Section 362(g), burden of proof has generally been interpreted as burden of persuasion, not the burden of going forward. The party seeking relief from the automatic stay has an initial burden of going forward with the evidence to establish *prima facie* cause for relief; but the burden of proof, i.e. the burden of persuasion, then shifts to the party opposing relief on all issues, except the existence

of equity. *In re Busch,* 294 B.R. 137, 140–41 (10th Cir. BAP 2003); *In re Allred,* 2004 WL 3502655 at *3, fn. 1 (Bankr. M.D.N.C.2004); *In re Property Technologies, Ltd.,* 263 B.R. 750, 753–54 (Bankr. E.D.Va.2001); *In re Self,* 239 B.R. 877, 880 (Bankr.E.D.Tex.1999). This burden of persuasion may also be viewed as the risk of non-persuasion. *In re Self,* 239 B.R. at 880.

In the Muhaimin case, Deutsche has alleged multiple filings, i.e. three, by the Debtor and co-debtor; it has made a conclusory allegation that the petitions were filed in bad faith; it has alleged a delinquent debt; and it has alleged injury from the delay in being permitted to foreclose. It has proved the multiple filings by asking the court to take judicial notice of case filings in this court. Similarly, in the Brown case Chase has alleged a delinquent debt, multiple filings by Debtor and her spouse, and injury from the continued imposition of the automatic stay. In Flythe, Community alleged and established only two petitions; and it alleged a delinquent debt and made a conclusory assertion of bad faith. No actual injury was alleged. All of the creditor movants are thus proceeding under Section 362(d)(4)(B), based on multiple filings. However, none of them has carried its burden of going forward to establish a prima facie basis for concluding the multiple filings that affected the real property was part of a scheme to defraud creditors. None of them alleged all the elements of fraud. Consequently, although none of the respondents offered proof, the risk of non-persuasion on the elements required for BAPCPA § 362(d)(4) relief never passed to the respondents.

## B. APPLICATION OF BAPCPA SECTION 362(d)(4) TO CASES AT ISSUE

A review of the bankruptcy petitions filed in this court by each of the respondents supports a finding that the repeated filings constituted a scheme to hinder creditors. Mrs. Muhaimin or her husband filed three bankruptcy cases in a 17 month period, all staying scheduled foreclosure sales by Deutsche. Mrs. Brown or her husband filed three bankruptcy cases in a 20 month period, all staying scheduled foreclosure sales or foreclosure proceedings by Chase. Mr. Flythe filed two bankruptcy proceedings in a five month period, both staying scheduled foreclosure sales or foreclosure proceedings by Community, with the second case having been filed while the earlier case was still pending. Upon the filing of each bankruptcy petition, the secured creditor was prevented from completing the foreclosure or concluding the sale, thus thwarting each creditor's foreclosure efforts. The repeated nature of the various filings by Debtor, each filed just prior to a foreclosure sale scheduled by the secured creditor or after foreclosure proceedings were initiated by the secured creditor, constitutes a scheme by each debtor, and her spouse in the Muhaimin and Brown cases, to hinder creditors.

None of the movants have come forward, however, to make a prima facie showing that the filing of Debtor's petition was part of a scheme to defraud creditors. No creditor has alleged that there was any false representation or that the creditor has been damaged as a result of any misrepresentation. There has been no allegation or proof that the creditors' secured position has been damaged as a result of the bankruptcy filings, only delayed. In order to obtain relief under Section 362(d)(4), a creditor must make a prima facie showing of cause for relief, and Deutsche, Chase and Community each fall short of making such a showing of a scheme to defraud. Consequently, each creditor's motion for relief under BAPCPA § 362(d)(4) will be denied.

Since none of the movants have made a prima facie showing relative to the fraud element under BAPCPA § 362(d)(4), it is not necessary for the court to reach the element of delay.

## C. EQUITABLE SERVITUDE IMPOSED UNDER *YIMAM*

In *Yimam, supra,* the court was faced with serial bankruptcy filings. The Debtor and her non-debtor husband had repeatedly frustrated a secured creditor's attempts to foreclose on real property co-owned by the Debtor and her spouse on which the creditor held a mortgage lien. The Debtor and her spouse had been able to stave off foreclosure by strategically taking advantage of the automatic stay under 11 U.S.C. § 362(a) and avoiding the refiling limitation in Section 109(g)(2) through the alternate filing of bankruptcy petitions prior to foreclosure sales. Each subsequently voluntarily dismissed each of his or her successive bankruptcy cases, sometimes after relief from stay had been granted to the secured creditor.[7] The court found that these actions constituted "a continuous use of the bankruptcy system for the purpose of forestalling foreclosure," that in addition Debtor had made no effort to prosecute the current Chapter 13 case, and that nothing prevented her husband from filing again upon dismissal of the Debtor's case or after relief from stay was granted to the secured creditor, thus continuing the process absent court intervention. *In re Yimam,* 214 B.R. at 465.

The court, invoking its powers under 11 U.S.C. § 105(a), implemented a mechanism to prevent the "continuing abuse of the bankruptcy process" by the debtor and her spouse as follows:

Whether what the court imposes is called an equitable servitude, a covenant running with the land, or a restraint on alienation, the result will be the same— the prohibition of any bankruptcy filing, voluntary or involuntary, that will impose the automatic stay an eighth time as to the subject real property.

\*　　\*　　\*　　\*　　\*　　\*

Such an order fits squarely within the reason for the enforcement of equitable servitudes, and serves the policy for the recognition of such servitudes. The fundamental function of an equitable servitude is to transfer an owner's entitlements, other than possession, for the efficient utilization of land. (Citation omitted). Given the facts of this case, it is the Court's judgment that *the efficient utilization of the property here at issue will be best promoted by permitting [the secured creditor] to proceed with its foreclosure sale unimpeded by a further automatic stay resulting from the filing of a bankruptcy case by any subsequent owner of the property at issue for the next 180 days.*

*In re Yimam,* 214 B.R. 463, 466–67 (emphasis added).

*Yimam* recognized that creditors have the option to request, in addition to relief from the automatic stay under Section 362(d), the imposition of an equitable servitude on property in which a debtor has an interest upon showing that the debtor, with others having interest in the property, is: (1) a serial bankruptcy filer (2) whose filings constitute a continuing abuse of the bankruptcy process. Upon such a

---

**7.** Specifically, the debtor in *Yimam* and her husband had alternately filed a total of seven cases, including five chapter 13 and two Chapter 11 cases over a four year, three month period. *In re Yimam,* 214 B.R. at 465.

All of the prior cases were dismissed upon motion of the debtor or her husband, except for the Chapter 11 case filed by debtor (the first of her four filings), which was dismissed on motion by the United States Trustee. *Id.*

showing by the moving creditor after proper notice to debtor and any non-debtor co-owners, the court has been willing before BAPCPA to impose an equitable servitude upon property of the debtor and non-debtor co-owners for a period not to exceed 180 days. *Cf., In re Tomlin*, 105 F.3d 933 (4th Cir.1997) (a bankruptcy court's interpretation of its order dismissing a bankruptcy case with prejudice as limited to the 180 days used in 11 U.S.C. § 109(g) was reasonable.)

## D. CONTINUING VITALITY OF *YIMAM*.

In enacting BAPCPA § 362(d)(4), did Congress intend to overrule implicitly the judicial doctrine adopted in *Yimam?* "The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific." *Midlantic Nat. Bank v. New Jersey Department of Environmental Protection*, 474 U.S. 494, 501, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986). Congress did not make specific reference to *Yimam* when it enacted BAPCPA § 362(d)(4). This omission is not surprising, however, because *Yimam* represents the effort of only one judicial district to address what it perceived as an abuse of the bankruptcy process presented by multiple filers. As stated by the U.S. Supreme Court in *United States v. Ron Pair Enterprises*, 489 U.S. 235, 246, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989), in referring to the pre-Bankruptcy Code practice of denying post-petition interest to holders of non-consensual liens while allowing interest to holders of consensual liens, which it characterized as an exception to an exception:

It was certainly not the type of "rule" that we assume Congress was aware of when enacting the Code; nor was it of such significance that Congress would have taken steps other than enacting statutory language to the contrary.

Since ordinarily the "plain meaning of legislation should be conclusive, ..." the question for resolution here is "whether Congress has expressed an intent to change the interpretation of a judicially created concept ..." by "enacting statutory language [in BAPCPA § 362(d)(4) ] to the contrary" of the *Yimam* judicial doctrine. *Id.* at 242, 245, 246, 109 S.Ct. 1026.

There are parallels between BAPCPA § 362(d)(4) and the *Yimam* doctrine. Both address abuses of the bankruptcy system by serial filers, and both may produce a document recordable among land records that prevents the automatic stay from applying to specific real property for a fixed period.

The statutory language of BAPCPA § 362(d)(4) and the *Yimam* doctrine are focused, however, on different abuses, and each imposes a penalty that, while similar in form, is materially different in duration. The prerequisite for relief under BAPCPA § 362(d)(4) is a finding by the court that there has been "a scheme to delay, hinder, and defraud creditors." 11 U.S.C. § 362(d)(4). The justification for the *Yimam* doctrine, on the other hand, is "to forestall the [debtors'] continuing abuse of the bankruptcy process," highlighted by "the objective futility of any plan offered by the [debtors], [where the] debtor made no effort to prosecute this bankruptcy case." *Yimam*, 214 B.R. at 465. The abuse addressed by BAPCPA § 362(d)(4) is that the bankruptcy filing is part of a scheme to defraud creditors, while the abuse addressed by *Yimam* is futility and lack of effort to pursue Chapter 13 bankruptcy relief.

Where a court finds the predicates for relief under BAPCPA § 362(d)(4) to exist, relief as to particular real property is for two years after the order granting relief is

entered. Where an equitable servitude is imposed under *Yimam*, it was only for 180 days, which is the period of ineligibility imposed on a debtor by Congress in 11 U.S.C. § 109(g) in certain other instances of a debtor's failure to proceed properly.

BAPCPA § 362(d)(4) is not inconsistent with the *Yimam* doctrine. The findings necessary to grant or deny relief under one would not foreclose relief under the other. There is nothing in the specific language of BAPCPA § 362(d)(4) that would suggest Congress intended to foreclose alternate, parallel relief under a judicial doctrine such as *Yimam* that addresses the futility of repeated Chapter 13 filings by particular debtors. Consequently, relief under *Yimam* is not superceded by BAPCPA § 362(d)(4), but rather survives and co-exists *in pari materia* with it, as an alternative remedy available to creditors dealing with serial bankruptcy filers.

### E. APPLICATION OF *YIMAM* TO CASES AT ISSUE

■ Creditors Chase and Community did not ask in their written motions for the imposition of equitable servitudes against Brown's and Flythe's properties, respectively, under *Yimam*. While counsel for Chase requested relief against Ms. Brown's property at the hearing under either *Yimam* or BAPCPA, a movant is precluded from requesting additional relief by default not prayed for in movant's original demand. *See In re Genesys Data Technologies, Inc.*, 204 F.3d 124, 132–33 (4th Cir.2000). Based on their motions requesting relief for two years, Community and Chase were seeking relief solely under BAPCPA § 362(d)(4), which will be denied for the reasons previously stated.

■ Deutsche's Motion, however, requests imposition of an equitable servitude for 180 days against the real property owned by Mrs. Muhaimin and her husband, based on their repeated alternative bankruptcy filings in advance of foreclosure. Ms. Muhaimin's failure to obtain credit counseling further highlights her lack of effort in the most recent bankruptcy case, which itself became objectively futile because of her inaction. This is precisely the relief authorized by *Yimam* and for which the court has determined *Yimam* remains good law. Such relief is appropriate based on the three bankruptcy cases filed in 17 months by the Debtor or Mr. Muhaimin, two of which were filed on the day of or the day prior to a scheduled foreclosure sale. This pattern of conduct, while not proven to be fraudulent as to creditors, nonetheless is the type of conduct that constitutes a continuing abuse of the bankruptcy process. Consequently, the court will impose an equitable servitude on the property at 809 Bradhurst Road, Baltimore, Maryland for a period of 180 days.

Therefore, it is, by the United States Bankruptcy Court for the District of Maryland,

ORDERED, that Deutsche Bank National Trust Co.'s Motion for imposition of a statutory servitude under 11 U.S.C. § 362(d)(4) on the property located at 809 Bradhurst Road, Baltimore, Maryland, is hereby DENIED; and it is further

ORDERED, that Chase Home Finance LLC's Motion for imposition of a statutory servitude under 11 U.S.C. § 362(d)(4) on the property located at 1337 Chapelview Drive, Odenton, Maryland, is hereby DENIED; and it is further

ORDERED, that Community Development Administration's Motion for imposition of a statutory servitude under 11 U.S.C. § 362(d)(4) on the property located at 551 East 38th Street, Baltimore, Maryland, is hereby DENIED; and it is further

ORDERED, that Deutsche Bank National Trust Co.'s Motion for imposition of an equitable servitude against imposition of the automatic stay on the property located at 809 Bradhurst Road, Baltimore, Maryland, is GRANTED for a period of 180 days after the date this order is entered.